General William C. **WESTMORELAND**, Plaintiff,

v.

**COLUMBIA BROADCASTING SYSTEM, INC.; Sauter, Van G.; Crile, George: Wallace, Michael: Adams, Samuel A., Defendants.**

Appeal of CABLE NEWS NETWORK, INC.

In re WAIVER OF LOCAL RULE 7 TO PERMIT AUDIO–VISUAL COVERAGE OF THE TRIAL IN GENERAL WILLIAM C. WESTMORELAND V. CBS, INC., 82 Civ. 7913 (PNL).

No. 471, Docket 84–7809.

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 1984.

Decided Nov. 2, 1984.

Laurence H. Tribe, Cambridge, Mass. (Robert G. Morvillo, Obermaier, Morvillo & Abramowitz, P.C., New York City, Stuart F. Pierson, Ann K.H. Simon, William E. Kennard, Andrew D. Koblenz, Mark E. Martin, Verner, Liipfert, Bernhard, McPherson & Hand, Chartered, Washington, D.C., of counsel), for Cable News Network, Inc.

Steven E. Obus, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., for the Southern District of New York, Thomas D. Warren, Asst. U.S. Atty., New York City, of counsel), for the Bd. of Judges of the U.S. Dist. Ct. for S.D.N.Y.*

Before OAKES and WINTER, Circuit Judges, and CLARIE, District Judge.**

OAKES, Circuit Judge:

This case presents the novel question whether a cable news network has a right to televise a federal trial and the public a right to view that trial—where the court is adjudicating a civil action, where both parties have consented to the presence of television cameras in the courtroom under the close supervision of a willing court, but where a facially applicable court rule prohibits the presence of such cameras. The rule is backed by a canon of the Code of Judicial Conduct for United States Judges and supported by resolutions, recommendations, and reports of the Judicial Conference of the United States. It was adopted by the federal district court in which the trial in question is taking place, pursuant to the statutory and rulemaking power the district court holds to determine the conduct of trial procedure within its courtrooms.

The challenge we address, however, is directed to the rule as applied to a particular trial, *Westmoreland v. CBS, Inc.*, 82 Civ. 7913 (S.D.N.Y. filed Nov. 30, 1982) (Leval, J.). The appellants argue that, given the extraordinary nature of the *Westmoreland* trial, the application of a general rule prohibiting television coverage of that trial is both beyond the court's powers and in violation of the First Amendment rights of the television network and the public. Moreover, the facts that frame the *Westmoreland* trial are asserted to be of particular importance, because the substantive issues in *Westmoreland* implicitly mirror the institutional tensions raised before this court—in *Westmoreland*, one party seeks redress of injury flowing from statements asserting that the Government withheld information from the public in order to insulate the Government from public scrutiny; while the other party, seeking to defend the integrity of those statements, implicitly defends the integrity of the medium through which those statements were made. Be this as it may, assuming arguendo that *Westmoreland* presents the paradigm case for televising a federal trial, we

---

* The United States Attorney's office appeared in its capacity as an officer of the Southern District Court to file a brief for the Board of Judges.

** Of the United States District Court for the District of Connecticut, sitting by designation.

nevertheless affirm, for the reasons we state below.

## FACTS

The trial of *Westmoreland v. CBS, Inc.* commenced before the United States District Court for the Southern District of New York, Pierre N. Leval, Judge, on October 9, 1984, in a courtroom that, we assume on judicial notice, accommodates no more than 150 seats, 80 of which have been set aside for the news media. We assume that the appellant, Cable News Network, Inc.,[1] correctly describes the case in noting "the pervasive and historical import of its issues, the prevalence of television in its facts and law, and the unanimous desire of the participants to disseminate the entire trial to all who would observe." We also assume, as put forth by the district court, that among the questions at issue in the trial will be whether the high United States military command in Vietnam willfully distorted intelligence data to substantiate optimistic reports on the progress of the war and whether one of the nation's most important sources of news and commentary subsequently engaged in defamation of a public figure. These issues are no doubt of considerable, if not, as the district court believes, the "highest" national importance.

We further assume the truth of CNN's assertion that the guidelines it proposed to the district court on a one-case experimental basis follow the guidelines of some forty-one states that now permit, in one form or another, audiovisual coverage of court proceedings, trial, appellate, or both. We may therefore assume that those guidelines have been reasonably tested in the state courts and are narrowly tailored to achieve unobtrusive distribution of audiovisual coverage.[2] Thus, CNN's initial petition to the district court for permission to distribute comprehensive coverage of the *Westmoreland* trial reflects a conscientious broadcaster taking appropriate steps to join an important issue in the courts.

In a carefully reasoned opinion and order, Judge Leval felt that, for various reasons summarized in the margin,[3] CNN's petition "should be granted." Nevertheless, he denied the application on September 19, 1984, because "the rules of the Judicial Conference and of this court are to the contrary," and because he believed that the rule was not subject to waiver. 596 F.Supp. 1166. On September 27, 1984, CNN filed a motion for reconsideration, based on the argument that the reasoning underlying the court's previous denial of CNN's petition constituted an authoritative

1. CNN is a 24-hour television news network subsidiary of the Turner Broadcasting Co. of Atlanta, Georgia. Its programs reach more than 27 million people, and its operations are supported by extensive experience in providing comprehensive live coverage of court trials.

2. The guidelines proposed were to the effect that sole power to control coverage rests with the trial judge; that the experiment is based upon consent of the parties and agreement of the media; that television and radio coverage would be pooled; that there would be no audio pickup of communications between attorneys and clients, conferences at the bench, etc.; that there would be one television and two still cameras at approved locations, without distracting sound or light, per an appended diagram, with personnel in place 15 minutes before proceedings commence. These guidelines appear to follow those reviewed in *Chandler v. Florida*, 449 U.S. 560, 566, 101 S.Ct. 802, 805, 66 L.Ed.2d 740 (1981); *see also In re Petition of Post-Newsweek Stations, Florida, Inc.*, 370 So.2d 764, 778–79, 783–84 (Fla.1979). As to any classified in-

formation involved in *Westmoreland*, CNN essentially waives access.

3. These reasons include:

1. The experience of many states that live telecasting need not interfere with the fair and orderly administration of justice;

2. Other cases where exclusion of television might be necessary may be faced as they arise;

3. Telecasting does not offend the Constitution but perhaps infringes on the litigants' or public's rights to a public trial;

4. The public should see how the courts function, especially where the public interest is involved as it is here, where "[i]t could even be reasonably argued that the filming of this trial is more important than its decision";

5. It would be in the interest of the federal judiciary to let the public see how hard it works and how fair it is, were trials generally to be televised;

6. It is a safe prediction that the eventual entry of the camera into the federal courtroom is inevitable.

finding that the general factual premises underlying Canon 3 A(7) [4] of the Canons of Judicial Conduct for United States Courts (hereinafter Canon 3 A(7)) and Local General Rule 7 [5] of the Southern District of New York do not apply to the circumstances of this case. The motion for reconsideration was denied by Judge Leval on September 28, 1984.

Meanwhile, on September 19, 1984, CNN had petitioned the Board of Judges of the Southern District for a waiver of General Rule 7. We will treat, as the parties have treated, a letter of October 1, 1984, signed by Chief Judge Constance Baker Motley, stating that "it was the view of the Board of Judges that Local Rule 7 should not be waived," as a denial of that petition.

This appeal is by CNN from the opinion and order of Judge Leval dated September 19, 1984, denying the initial petition to distribute coverage, from the denial of CNN's motion for reconsideration dated September 28, 1984, and from the determination of the Board of Judges denying CNN's petition for waiver of General Rule 7 on October 1, 1984. CNN initially filed a petition for a writ of mandamus with this court; but on the basis that such a writ may not be used in lieu of an appeal, the petition was denied by a panel consisting of Judges Kaufman, Pierce, and Winter.

## DISCUSSION

*Appealability*

■ The circuits have expressed some disagreement concerning the proper avenue for appellate review of district court orders limiting media access to judicial proceedings. *See United States v. Chagra,* 701 F.2d 354, 359–60 (5th Cir.1983). Recently, this court followed the Third Circuit's approach of allowing media intervenors to appeal orders limiting courtroom access under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), because such an order is a final disposition by the district court collateral to the rights asserted in the main action and posing a risk of irreparable harm while involving a serious and unsettled question of law. *See In re Herald Co.,* 734 F.2d 93, 96 (2d Cir.1984). Like the *Herald* panel, we find that the district court "in effect permitted [the press] to intervene in the pending ... case, at least for the purpose of objecting to closure of the courtroom." *Id.; see Chagra,* 701 F.2d at 358–59 (relying on the collateral order doctrine regardless of whether the media appellant intervened); *Newman v. Graddick,* 696 F.2d 796, 800 (11th Cir.1983) (same); *cf. Martin-Trigona v. Schiff,* 702 F.2d 380, 385–86 (2d Cir.1983) (holding that "there are situations where a nonparty is allowed to appeal if the trial court's judgment has affected the nonparty's interest"). *See also United States v. Mitchell,* 386 F.Supp. 639, 640 (D.D.C.1975) (motion filed by press objecting to closure order treated as separate miscellaneous civil proceeding). We thus treat the orders of the

---

**4.** Canon 3 A(7) provides:

A judge should prohibit broadcasting, televising, recording, or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that a judge may authorize:

a. The use of electronic or photographic means for the presentation of evidence, or for the perpetuation of a record; and

b. The broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings.

**5.** General Rule 7 of the United States District Courts for the Southern and Eastern District of New York provides:

The taking of photographs and the use of recording devices in the courtroom or its environs, except by officials of the court in the conduct of the court's business, or radio or television broadcasting from the courtroom or its environs, during the progress of or in connection with judicial proceedings, including proceedings before a United States Magistrate, whether or not the court is actually in session, is prohibited.

This was apparently adopted pursuant to Recommendation D of the Judicial Conference of the United States, 87 F.R.D. 518 (1980) (tracking a 1962 resolution to the same general effect).

**20**

district court and the determination of the Board of Judges [5a] as appealable.

*CNN's Ultra Vires Argument*

CNN argues that General Rule 7 is unauthorized as applied to this case, because 28 U.S.C. § 2072, the ultimate statutory authority for the provision,[6] prohibits the adoption of rules that "abridge, enlarge or modify substantive rights,"[7] and the appli-

cation of General Rule 7 violates that prohibition in this particular case by abridging the First Amendment rights of CNN and the public.

The salient feature of this ultra vires argument is its dependence upon the existence of a substantive right under the First Amendment to television camera access to a federal trial.[8] CNN does not argue

**5a.** Judge Winter may well be correct that an appeal from a ruling of the Board of Judges is not ordinarily and should not be appealable since, presumably, the Board will ordinarily be acting, if it acts at all, in an administrative rather than a judicial capacity. We express no opinion on the wisdom or propriety of a Board of Judges' acting upon individual applications for the waiver of a local rule of general application although we can envisage the administrative and appellate difficulties that freely entertaining such petitions might conceivably bring about. Where, however, as here, the district court has invited a petition for waiver by holding in effect that it would have granted the petition to televise had it the power to do so, where the matter has been briefed and argued for the Board of Judges (and incidentally not for the district judge), and where the substantive points of the validity of the rule and of the denial of waiver arise in the context of the First Amendment and potential prior restraint, we will, without in any way announcing a rule of general applicability, treat the denial of waiver as appealable in conjunction with the attack on Judge Leval's order, for purposes of this case only.

**6.** There are actually several provisions that authorize the adoption of General Rule 7. Under 28 U.S.C. § 2071 "the Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business . . . consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court." Fed.R.Civ.P. 83 provides that "[e]ach district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules." The Notes of the Advisory Committee on Rules provide that "this rule substantially continues U.S.C. Title 28, Section 2071, formerly 731." Rule 79 of the New Equity Rules of 1912 stated:

With the concurrence of a majority of the circuit judges for the circuit, the District Courts may make any other and further rules and regulations for the practice, proceedings and process, *mesne* and final, in their respective district, not inconsistent with the rules hereby prescribed, and from time to time alter and amend the same.

The New Federal Equity Rules 299 (J. Hopkins ed. 1929).

Moreover, federal courts have "inherent powers," those which "are necessary to the exercise of all others." *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (inherent powers must be exercised with restraint and discretion). Even in the absence of rulemaking authority, regulation of the courtroom lies within the inherent power of the courts.

**7.** 28 U.S.C. § 2072 provides in part:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings and motions, and the practice and procedure of the district courts and courts of appeals of the United States in civil actions, including admiralty and maritime cases, and appeals therein, and the practice and procedure in proceedings for the review by the courts of appeals of decisions of the Tax Court of the United States and for the judicial review or enforcement of orders of administrative agencies, boards, commissions, and officers.

Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution.

**8.** CNN also argues that the Code of Judicial Conduct for United States Judges cannot be binding because it was adopted without citation to any statutory or other authority. *See* 69 F.R.D. 273 (1976); Annual Report of the Director of the Administrative Office of the United States Courts 9–11 (1972). Specifically, the Judicial Conference that adopted Canon 3 A(7), which General Rule 7 implements, derives its authority from 28 U.S.C. § 331, which speaks of "suggestions to the various courts in the interest of uniformity and expedition of business," and does not purport to enable the courts to adopt procedural rules that affect substantive rights. The foregoing analysis of the statutory authority of Canon 3 A(7) serves to supplement CNN's attack on the statutory authority for General Rule 7, but we need not address it here. It is General Rule 7, not Canon 3 A(7), that is at issue here.

against the authority of the judiciary to adopt general rules prescribing the conduct of courtroom proceedings. It instead argues that in this particular case, the First Amendment abridgement resulting from the implementation of General Rule 7 renders its application here ultra vires. The constitutional issues emerge as determinative of CNN's claims in this case, and to those issues we now proceed.

### The Constitutional Right to Obtain Waiver of General Rule 7 in the Westmoreland *Trial*

As an initial matter, we address the First Amendment claims of the press but quickly fold them, given the circumstances of this case, into the First Amendment claims of the public, for CNN's status as a member of the press does not entitle it to claim a First Amendment right to televise federal trials. As Chief Justice Warren observed in *Estes v. Texas,* 381 U.S. 532, 585–86, 85 S.Ct. 1628, 1654, 14 L.Ed.2d 543 (1965) (concurring opinion), "On entering [the courtroom], where the lives, liberty and property of people are in jeopardy, television representatives have only the rights of the general public, namely, to be present to observe the proceedings, and thereafter, if they choose, to report them." Similarly, in Justice Harlan's critically important [9] concurring opinion in *Estes,* he said that "there is no constitutional requirement that television be allowed in the courtroom." *Id.* 381 U.S. at 587, 85 S.Ct. at 1662; *accord Chandler v. Florida,* 449 U.S. 560, 569, 101 S.Ct. 802, 807, 66 L.Ed.2d 740 (1981); *cf. Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 428 (5th Cir. Unit A 1981) (holding that the press enjoys no constitutional right to physical access to courtroom exhibits). Although *Chandler v. Florida* held that *Estes* does not stand as a ban on state experimentation with evolving television technology, it nevertheless did not endow the media with substantive rights qua media. *Cf. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 610, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570 (1978) ("the guarantee of a public trial ... confers no special benefit on the press").

Two premises underlie CNN's constitutional claim that the public possesses a First Amendment right to television camera access to this particular trial. The first is that, in the adjudication of the claims in *Westmoreland,* the trial serves as a public forum. The second is that the opportunity for all members of the public to see and hear the trial as it occurs is protected by the First Amendment.

The public forum premise in CNN's constitutional argument is itself predicated upon the view that trials have always been "public" in the broad sense that the courtroom is such a paradigmatic platform for public communication "that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Gannett Co. v. DePasquale,* 443 U.S. 368, 429 n. 10, 99 S.Ct. 2898, 2931 n. 10, 61 L.Ed. 608 (1979) (Blackmun, J., concurring in part and dissenting in part) (quoting *Cowley v. Pulsifer,* 137 Mass. 392, 394 (1884) (Holmes, J.)). The litigation involved here is said to serve as a constitutionally protected "form of political expression." *NAACP v. Button,* 371 U.S. 415, 429, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963). It is suggested that the federal courtroom in this case is even more clearly a public forum for the parties to the litigation than was the criminal trial at issue in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), where the Supreme Court upheld a First Amendment right of the public and press to observe a criminal trial over the protest of the accused. *See also Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir.1984) (holding that the public has a right of access to civil proceedings). However this may be, it has never been suggested that there is a link between the First Amendment interest that a litigant has in his trial as a "form of expression" and the right that the public may have to view that expression on television. Whatever public forum interest may exist in

---

9. *See Chandler v. Florida,* 449 U.S. at 571–73 & n. 8, 101 S.Ct. at 808 & n. 8.

litigation, that interest is clearly a speaker's interest, not an interest in access to the courtroom. Because the ability of neither General Westmoreland nor CBS to express views at trial is altered by the presence or absence of television cameras, CNN's public forum argument is, by itself, inapposite. CNN's constitutional argument rests on its second premise.

The second premise in CNN's constitutional argument is the proposition that the public's opportunity to see and hear a trial is protected by the First Amendment. We, of course, agree that the public (in this instance, the putative viewers) has First Amendment interests that are independent of the First Amendment interests of speakers (in this instance, the parties to the trial). *See, e.g., First National Bank v. Bellotti*, 435 U.S. 765, 777, 98 S.Ct. 1407, 1416, 55 L.Ed.2d 707 (1978) ("The inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union or individual."); *Bates v. State Bar*, 433 U.S. 350, 364, 97 S.Ct. 2691, 2699, 53 L.Ed.2d 810 (1977) ("The listener's interest is substantial: the consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue."); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 76, 96 S.Ct. 2440, 2455, 49 L.Ed.2d 310 (1976) (Powell, J. concurring) ("Vital to this concern [of the free speech guarantee] is the corollary that there be full opportunity for everyone to receive the message."); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756, 96 S.Ct. 1817, 1822, 48 L.Ed.2d 346 (1976) (First Amendment "protection . . . is to the communication, to its source and to its recipients both"). It may also be true that the public's right to receive information may not be vitiated by appeals to the availability of alternative means for receipt of the information. *See Kleindienst v. Mandel*, 408 U.S. 753, 765, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972). No case, however, has held that the public has a right to televised trials.

The cases referred to us by CNN involve orders closing the courtroom to members of the press and public. None involve orders permitting such access while not permitting television cameras in the courtroom. There is, to be sure, an abundance of support in the cases for a constitutionally grounded public right of access to the courtroom. In *Richmond Newspapers*, 448 U.S. at 580 n. 17, 100 S.Ct. at 2829 n. 17. Chief Justice Burger, speaking for himself and for Justices White and Stevens, stated that "[w]hether the public has a right to attend trials in civil cases is a question not raised by this case, but we note that historically both civil and criminal trials have been presumptively open." Justice Brennan, in his concurring opinion, *id.* 448 U.S. at 596–97, 100 S.Ct. at 2838, stated that publicizing trial proceedings aids accurate factfinding and furthers the public purposes of trials. Justice Stewart, concurring, stated that "the First and Fourteenth Amendments clearly give the press and the public a right of access to trials themselves, civil as well as criminal." *Id.* at 599, 100 S.Ct. at 2839; *see also id.* at 604, 100 S.Ct. at 2842 (Blackmun, J., concurring). As pointed out in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982), the decision in *Richmond Newspapers* "firmly established for the first time that the press and general public have a constitutional right of access to criminal trials . . . seven Justices recogniz[ing] that this right of access is embodied in the First Amendment." Underlying that First Amendment right of access "is the common understanding that 'a major purpose of that Amendment was to protect the free discussion of governmental affairs,' *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966)." *Id.* 457 U.S. at 604, 100 S.Ct. at 2842; *see also Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (guarantee of open public proceedings in criminal trials covers proceedings for the voir dire examination of potential jurors).

Furthermore, we agree with the Third Circuit in *Publicker Industries, supra,* that the First Amendment does secure to the public and to the press a right of access to civil proceedings in accordance with the dicta of the Justices in *Richmond Newspapers,* because public access to civil trials "enhances the quality and safeguards the integrity of the factfinding process," *Globe Newspaper,* 457 U.S. at 606, 102 S.Ct. at 2620, "fosters an appearance of fairness," *id.,* and heightens "public respect for the judicial process," *id.,* while permitting "the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self government," *id.* We may submit to all of this, and yet not submit to CNN's argument, because these cases articulate a right to *attend* trials, not a right to view them on a television screen. *See Richmond Newspapers,* 448 U.S. at 577 n. 12, 100 S.Ct. at 2827 n. 12 (Burger, C.J., joined by White, J., and Stevens, J.).

CNN argues that because a courtroom is so small that not every person who wishes to attend can be accommodated or can even arrange to be physically present, the public's rights are wholly diluted. The public may read about the trial from the printed transcript or a newspaper account only after some delay, or it may receive radio or television reports similarly filtered through a reporter, with no opportunity to hear and observe directly the trial in process. The public, CNN argues, is relegated by the operation of the rule to "qualitatively inferior, stale and wooden interpretations of what occurred."

■ There is a long leap, however, between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised. It is a leap that is not supported by history. It is a leap that we are not yet prepared to take. It is a leap that many federal judges and, indeed, apparently the judges of the Southern District of New York, one of the most eminent district courts in the United States, oppose. CNN's argument, of course, is not that such a right is absolute, but rather that it is qualified, arising in a case presumably of public importance, with willing parties, a willing trial court, and guidelines so that the evils of television coverage contemplated by General Rule 7 or by the recent statement of the Ad Hoc Committee of the Judicial Conference of the United States on the subject [10] do not in fact occur.

There may indeed come a time when the "experimentation," *Chandler v. Florida,* 449 U.S. at 574, 101 S.Ct. at 809, with television coverage establishes that the concerns with expenditure of judicial time on administration and oversight of broadcasting; the necessity of sequestering juries so that they will not look at the television program of the trial itself; the difficulty in empaneling an impartial jury in the case of a retrial; the necessity of larger jury panels or increased use of marshals; the psychological effects on witnesses, jurors, lawyers, and judges; and related considerations of "solemnity," "dignity," and the like are considered secondary or basically irrelevant as impediments to the search for truth when a given case is televised. At such a time the presumption may well be that all trials should be televised, or televisable, at least where the parties agree. Before that time arrives, it is possible that on an experimental or individual basis the federal courts or a particu-

---

10. While this case was pending, the Ad Hoc Committee on Cameras in the Courtroom reported to the Judicial Conference of the United States in respect to a March 8, 1983, petition of 28 radio, television, newspaper, and related organizations to permit broadcasting, televising, motion picture and still camera coverage of federal court proceedings. The committee concluded "that the alleged public benefits of the requested changes in the rules governing media coverage of currently open-to-the-public courtroom proceedings are outweighed by the risks to the administration of justice." Report of the Judicial Conference Ad Hoc Committee on Cameras in the Courtroom 3 (Sept. 6, 1984). These perceived risks included distractions and diversion of judicial time; psychological effects on jurors, witnesses, judges, and lawyers; jeopardizing "the required sense of solemnity, dignity and the search for truth." *Id.* at 7. The asserted public benefits of understanding and education were felt to be illusory since coverage is necessarily selective and "sensational." The 14-member committee was unanimous.

lar federal district court—we speak here of a court, as opposed to an individual judge thereof—may seek, subject to any higher authority, of course, to permit televising in individual cases.[11] But until that time, we certainly cannot say that a given district court lacks the power to prohibit all televising of trials within the district, across the board, because the public interest in television access to the courtroom does not now lie within the First Amendment.[12] Instead, our point is that until the First Amendment expands to include television access to the courtroom as a protected interest, television coverage of federal trials is a right created by consent of the judiciary, which has always had control over the courtrooms,[13] a consent which the federal courts, including the Southern District of New York, have not given.

Judgment in accordance with opinion.

**11.** Indeed, in a case sub judice in this court, District Judge Leonard B. Sand has observed that "[t]he continuing wisdom and appropriateness of [General Rule 7], as well as all other local rules, is the subject of continuing scrutiny and analysis by the judges of [the district] court and especially the Rules Committee." *United States v. Yonkers Bd. of Educ.,* 587 F.Supp. 51, 53 (S.D.N.Y.1984) (no tape recorder allowed in courtroom, appeal argued August 6, 1984, before a panel of Circuit Judges Van Graafeiland and Winter and District Judge Bartels).

**12.** Consequently, CNN's ultra vires argument fails, because it is predicated upon the existence of a substantive right abridged by the application of General Rule 7—a substantive right that we do not find.

**13.** It has never been suggested that the courtroom, even to the extent that it is perceived to be a public forum, is not subject to the control and direction of the court. CNN concedes as much, agreeing that the judiciary has the power "to adopt general rules of conduct concerning media coverage of trials or to require their observance in ordinary circumstances." As the Court recognized in *Sheppard v. Maxwell,* 384 U.S. 333, 358, 86 S.Ct. 1507, 1520, 16 L.Ed.2d 600 (1966), "the courtroom and courthouse premises are subject to the control of the court." Moreover, courts, like schools and libraries, are at most only secondarily institutions to foster public debate. Rather courts exist primarily to adjudicate legal controversies. Thus, they are public forums only in a special sense, "with government enjoying," as one commentator has put it, "the power to preserve such tranquility as

WINTER, Circuit Judge, concurring in the result:

I respectfully disagree with the rationale of Judge Oakes' opinion,[1] although I concur in the result. In my view, access to the courts for the purpose of conveying information to the public about judicial proceedings falls within the area of protected speech under the First Amendment. Since live television is one of the many ways in which such information may be conveyed, the First Amendment is implicated in a request to televise. However, I believe that Rule 7 is a legitimate time, place or manner restriction on otherwise protected speech. *See Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

The issue most easily resolved for me is whether the First Amendment is implicated by denial of a request to televise judicial

the facilities' central purpose requires." L. Tribe, *American Constitutional Law* § 12–21, at 690 (1978) (citing *Tinker v. Des Moines School Dist.,* 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969) (dictum), and *Grayned v. City of Rockford,* 408 U.S. 104, 107–17, 92 S.Ct. 2294, 2298–04, 33 L.Ed.2d 222 (1972); *see also* M. Nimmer, *Freedom of Speech* § 4.09[B], at 4–54 n. 76 (1984) ("Arguably a prohibition on television cameras in a courtroom constitues a non-speech restriction since the evil to be avoided is not the communication of witness testimony, but rather the intimidation of witnesses by reason of the camera's presence."). Let us not forget that the event CNN seeks to televise is a *trial.*

**1.** In addition to the disagreement recounted in the text, I would dismiss so much of the present matter as purports to be an appeal from what is treated as a ruling of the Board of Judges of the Southern District. Whether individual litigants should be accorded special rulings by that Board with regard to waiver of Local Rules is not for me to comment upon other than to say that such a ruling is not an appealable judgment. Attacks on the validity of local rules can and should be heard by a district court which will in due course issue a judgment. To the extent that a Board of Judges issues decisions other than the promulgation of local rules, those decisions also must be challenged in a district court. The suggestion that decisions by the Board may be appealed under 28 U.S.C. § 1291 is one that we, and any Board of Judges adventurous enough to respond to requests from individual litigants, will come to regret.

proceedings live. Public access to ongoing judicial proceedings for purposes of reporting on them is protected by the First Amendment, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), and must be allowed even in pretrial hearings in criminal matters absent a demonstrable need for secrecy. *In re Application of The Herald Company, United States of America v. Michael Klepfer*, 734 F.2d 93, 100 (2d Cir. 1984). I believe it follows from those cases that, where the media must be permitted access, particular forms of access may be barred only on a time, place and manner theory.

My reasons for upholding Rule 7 on such a theory are more complex. The fact that the Judicial Conference of the United States has recommended adoption of such a rule, that an *ad hoc* committee of that Conference recently reexamined the issue and unanimously declined to recommend a change, and that Canon 3 A(7) states that federal judges should prohibit television in their courtrooms, obviates for me any need to inquire *de novo* into whether the apprehensions about television are reasonable. The cumulative years of experience and considered deliberation represented by these various statements are more than ample to justify some restrictions on live television, whatever the views of an individual judge faced with a request to televise.

However, when closely analyzed, the various reasons for concern over television do not exclude the possibility that television may not be harmful in each and every case. CNN thus argues with some considerable force that, even assuming the apprehensions about television are correct, a *per se*, no exceptions rule banning television cannot be justified as a time, place and manner restriction.

Because I differ with the majority on the First Amendment issue, I must address CNN's argument that only a case-by-case determination with regard to television can be constitutionally justified. This contention seems to me to be in error because the various apprehensions about television—expenditure of judicial time on oversight, the need to sequester juries, difficulties in selecting juries, effects on witnesses, jurors, lawyers, judges, and court administration, etc.—when balanced against the arguments for television—public interest, importance of the subject matter, etc.—simply do not provide workable standards to govern a trial court's exercise of discretion. Indeed, because it is unworkable, a case-by-case rule will likely evolve into a presumption in favor of television. If the apprehensions about television are to be given weight, therefore, a *per se* rule can be justified.

Consider the decisional process of a case-by-case approach. A request to televise is first made by a network or local station. The very existence of that request indicates the existence of a strong public interest. Absent such an interest, no request will be made, and the issue will not arise. In almost every case in which the issue arises, therefore, an ostensibly strong claim as to the benefits of television, i.e. public interest, can be made, as it was here.[2] Next, the district judge weighs the (assumed to be valid) apprehensions about television against the claims of benefit. However, the decision to allow or disallow television must be made *ex ante*, well before the costs in judicial time and court administration, effects on witnesses, jurors, or lawyers can be known. Indeed, if such matters can ever be determined with certainty in a particular case, it is only after the fact. Once made, moreover, the decision to televise is likely to be final since the exclusion of television in the middle of a trial or for some witnesses may distort

---

**2.** The district court made much of the fact that sensationalism is not an element here, as it might be in other cases such as a murder trial. Op. at 19–20. Curiously, in doing so Judge Leval made arguments that seem to undercut the supposed need for live television. He disposed of any sense of immediacy by declaring that the

extended analysis by historians and commentators might be a more important reason for filming the trial than the verdict itself. Filming solely for historical purposes with no prospect for broadcast as news implicates different issues, however, and is not before us.

television coverage or affect the jury's verdict.

Seeking the views of the parties is possible but exposure of the reasons *pro* and *con* through true adversary argument is unlikely. Even a request for this might put unfair pressure on them lest opposition to television be revealed to the jury, which might then draw an improper inference. A party must also fear television commentary on its opposition to television coverage of a trial. It may be that in the instant case both General Westmoreland and CBS actually desired television. It is certain that neither would dare object. Finally, the fear of seeming to oppose television will likely induce parties to avoid making any of the arguments against it in a particular case.

The decision-making process of a case-by-case approach, therefore, is one in which the claim for television will almost always seem strong and the arguments against it will usually be unstated and always speculative. In practice, a case-by-case approach leaves a trial court to choose between allowing television or assuming a position as its sole adversary, and a largely uninformed one at that. The *de facto* result of the case-by-case approach may thus be very similar to a *de jure* rule allowing television in every case where demonstrable reasons for individual privacy do not exist. Even though it purports to respond to the apprehensions about television reflected in the various actions of the Judicial Conference and in the Canons, the case-by-case approach might in practice give them no weight whatsoever.

It is not, of course, a certainty that a case-by-case rule is unworkable or that it will quickly evolve into a strong presumption in favor of television. However, a reasonable belief that the potentially undesirable effects of television cannot be detected, or detected in a timely fashion, on a case-by-case basis is enough to justify a

*per se* rule as a legitimate time, place and manner regulation. Telecasting of ongoing proceedings is only one of many methods of reporting to the public on judicial actions, and arguably no better a method than others so far as conveying that information is concerned.[3] If telecasting is thought to impinge on the adjudicatory process in an undesirable fashion and a *per se* rule is necessary to guard against such undesirable effects, Rule 7 passes constitutional muster.

---

3. The arguments marshalled by CNN as to television's superiority as a medium for reporting judicial proceedings are based on live, daily, gavel-to-gavel coverage of an entire trial. The relief CNN seeks, however, is the right to televise, including video recording, when it chooses to do so and to broadcast as much or as little as it chooses.