[No. D011835. Fourth Dist., Div. One. July 2, 1990.]

KFMB-TV CHANNEL 8 et al., Petitioners, v.
THE MUNICIPAL COURT FOR THE SAN DIEGO JUDICIAL
DISTRICT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Gray, Cary, Ames & Frye, Edward J. McIntyre and Marilyn L. Huff for Petitioners.

Lloyd M. Harmon, Jr., County Counsel, and Lewis P. Zollinger, Deputy County Counsel, for Respondent.

Kerry Wells, Jack Michael Early, Edwin L. Miller, Jr., District Attorney, and Thomas F. McArdle, Deputy District Attorney, for Real Party in Interest.

OPINION

**WIENER, J.**—In 1989 an intruder shot and killed Daniel Broderick, a prominent San Diego attorney, and his wife, Linda, as they slept in their family home. Later, according to press reports, the intruder identified herself as Elizabeth Ann Broderick, Daniel Broderick's former wife. The tragic event and public statements by Mrs. Broderick have generated and continue to generate widespread publicity and substantial media attention.

On March 19, 1990, the date set for Mrs. Broderick's preliminary hearing, several media representatives requested and obtained court permission to conduct film electronic media coverage pursuant to California Rules of Court, rule 980.[1] In each instance, however, the court's order was qualified prohibiting the witnesses' statements from being broadcast without further court authorization.[2] Before the afternoon session of the preliminary hear-

---

[1] Rule 980(b) provides: "Film or electronic media coverage is permitted only on written order of the court. The court may refuse, limit, or terminate film or electronic media coverage in the interests of justice to protect the rights of the parties and the dignity of the court, or to assure the orderly conduct of the proceedings. This rule does not otherwise limit or restrict the right of the media to cover and report court proceedings."

All rule references are to California Rules of Court.

[2] The respective requests were made on the Judicial Council form "Request to Conduct Film and Electronic Media Coverage and Order." KGTV's order permitted TV camera and recorders and provided, "Can record but cannot broadcast statements of witnesses to public without further court order." The KFMB-TV order provided for TV camera and recorder and still camera provided "no testimony of witnesses to be broadcast to public without court permission."

The court later clarified its order stating, "The reporters and people from the media are free to take pictures and record all the proceedings, but the actual verbatim statements can-

ing commenced, counsel for three television stations, KFMB Channel 8, KGTV Channel 10, and KNSD Channel 39, asked the court to clarify the order suggesting that prohibiting broadcast of witnesses' statements without court approval was an unconstitutional prior restraint on publication. The court refused to remove its limitation. The three television stations promptly sought extraordinary relief from this court requesting that we direct the municipal court to vacate its order. For the reasons set forth below, we grant the petition.

DISCUSSION

I

■ It is now well established that the public and press have both a statutory and constitutional right to attend the preliminary hearing. Penal Code section 868 provides that preliminary examinations shall be open and public permitting the exclusion of the public only where "necessary in order to protect [a] defendant's right to a fair and impartial trial." Similarly, the United States Supreme Court in *Press-Enterprise Co.* v. *Superior Court* (1986) 478 U.S. 1, 13 [92 L.Ed.2d 1, 13, 106 S.Ct. 2735], held there is a qualified First Amendment right of access to preliminary hearings as they are conducted in California. In construing Penal Code section 868 and elucidating the scope of the right, the Supreme Court stated: "If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." (478 U.S. at p. 14 [92 L.Ed.2d at pp. 13-14].)

The force of the First Amendment and the right of the press to attend the preliminary hearing has not yet, however, been extended to include the right of the press to electronically record and broadcast the hearing. The United States Supreme Court has said, "there is no constitutional right to have [live witness] testimony recorded and broadcast" and "[t]he requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed." (*Nixon* v. *Warner Communications, Inc.* (1978) 435 U.S. 589, 610 [55 L.Ed.2d 570, 587, 98 S.Ct. 1306].)

---

not be displayed on a public facility such as a radio or TV without a further order from this court."

*Chandler* v. *Florida* (1981) 449 U.S. 560 [66 L.Ed.2d 740, 101 S.Ct. 802] reviewed the history of the use of cameras in the courtroom in light of a defendant's claim the televising of part of his trial had denied him his right to a fair, impartial trial. (449 U.S. at p. 568 [66 L.Ed.2d at p. 747].) The court noted the problem surrounding the publicity of sensational cases had originally led the American Bar Association to adopt a judicial canon that *prohibited* all photographic and broadcast coverage of courtroom proceedings. (449 U.S. at pp. 562-563 [66 L.Ed.2d at pp. 744-745].) It was not until 1978 that the conference of chief justices adopted a modification of the canon. This modification allowed for coverage by electronic media pursuant to local court rule under the supervision of the trial judge so long as it could be carried out "unobtrusively and without affecting the conduct of the trial." (449 U.S. at p. 564 [66 L.Ed.2d at p. 745].)

Relying on *Chandler* and *Nixon, Westmoreland* v. *Columbia Broadcasting System, Inc.* (2d Cir. 1984) 752 F.2d 16 stated: "[U]ntil the First Amendment expands to include television access to the courtroom as a protected interest, television coverage . . . is a right created by consent of the judiciary, which always had control over the courtrooms . . . ." (*Id.* at p. 24; see also *United States* v. *Yonkers Bd. of Educ.* (2d Cir. 1984) 747 F.2d 111, 112-113 and *Combined Communications Corp.* v. *Finesilver* (10th Cir. 1982) 672 F.2d 818, 821.)

From the time of its initial study of "cameras in the courtroom" California has taken a deliberate and thoughtful approach to accommodate the competing interests of the parties' rights to privacy and a fair trial and the public's right to scrutinize court proceedings. (See Judicial Council of Cal. Rep. (1965) ch. 9, p. 57.) The Judicial Council was well aware of the "delicate and critical relationship which exists between the constitutional guarantees of free press and fair trial . . . ." (*Ibid.*) The drafters of rule 980 were also well aware of the wisdom contained in Justice Brennan's observation "[s]ecrecy of judicial action can only breed ignorance and distrust of courts and suspicion concerning the competence and impartiality of judges; free and robust reporting, criticism, and debate can contribute to public understanding of the rule of law and to comprehension of the functioning of the entire criminal justice system, as well as improve the quality of that system by subjecting it to the cleansing effects of exposure and public accountability." (*Nebraska Press Ass'n.* v. *Stuart* (1976) 427 U.S. 539, 587 [49 L.Ed.2d 683, 714, 96 S.Ct. 2791] (conc. opn. of Brennan, J.).)

Notwithstanding their awareness of the importance of the considerations underlying the First Amendment, California's promulgation of rule 980 reflects a commitment to the court's inherent right to control access.

When rule 980 was first adopted effective January 1, 1966, subdivision (a) prohibited "photographing, recording for broadcasting and broadcasting." Subdivision (b) carved out a narrow exception for "ceremonial proceedings." As of January 1, 1977, subdivision (c) permitted photographing or electronic recording for "the perpetuation of the record" and to "allow persons in an adjacent court facility to observe the proceedings" if adequate measures were taken "to assure that the photographs and electronic recordings . . . remain[ed] in the custody of the court or its officers and [would] be used only for judicial purposes."

The current version of rule 980 became effective in July 1984. As noted earlier, subdivision (b) still leaves broad discretion in the trial court to "refuse, limit or terminate film or electronic media coverage in the interests of justice." Thus it is clear that the threshold determination as to whether representatives of the electronic media and their equipment should be allowed access is left to the court which must exercise its discretion to fairly balance the respective interests of the parties and the public and the effect of electronic coverage on the fair administration of justice.

■ Here the experienced trial court weighed the relevant considerations before granting authorization permitting film and electronic media coverage. Clearly the rule authorized such action. The rule, however, did not authorize imposing a blanket condition preventing the dissemination of the recording without court approval. We draw this conclusion from the language and history of the rule. Rule 980(b) provides, "The court may refuse, limit or terminate film or electronic media coverage" for certain stated reasons. Rule 980(a)(1) states: " '[f]ilm or electronic media coverage' means any recording or broadcasting of court proceedings by the media . . . " By its terms, the rule permits a court to refuse, limit or terminate *recording* of court proceedings and to refuse, limit or terminate *broadcasting* of court proceedings. However, once the proceedings have been recorded there is nothing in the rule authorizing the court to refuse, limit or terminate the later broadcasting of such proceeding. In short, the rule does not authorize a judge to become the editor of a television station's news broadcasts of a previously recorded judicial proceeding. The distinction between recording and broadcasting is consistent with definitions and treatment of those functions present through the various versions of rule 980.

As noted above, the original 1966 version of rule 980(a) prohibited "photographing, recording for broadcasting and broadcasting" with certain narrow exceptions. The evident distinction is between preserving for later

broadcasting and live broadcasting. On June 1, 1980, rule 980.2 was adopted establishing an experimental program of electronic coverage which led to the current rule. Rule 980.2(b) repeated the distinction between recording for broadcasting and broadcasting providing that "the provisions of rule 980 shall not apply to the photographing, recording for broadcasting, or broadcasting of court proceedings . . . if the requirements of this rule are observed." Rule 980.2(c)(3) defined extended coverage to mean "any media recording or broadcasting of proceedings" and rule 980.2(f)(2) authorized the judge to "refuse, limit or terminate extended coverage." The juxtaposition of the definitional and operative sections of the original version of rule 980 as well as 1980's rule 980.2 indicates the regulated subject of each was the recording for broadcasting and live broadcasting of court proceedings. Neither contained provisions authorizing the court to regulate the broadcasting of a recording of those provisions.

The operative provisions of present rule 980 are substantially the same as those of rule 980.2. It follows that the drafters intended the distinctions of its experimental predecessor to carry over into former rule 980 and that our current rule concerns the media recording for broadcasting and live broadcasting, and says nothing about broadcasting of previously recorded material.

In light of the foregoing, we conclude the court's order limiting the broadcasting of previously recorded trial court proceedings pursuant to the court's permission under rule 980 exceeded the rule's scope. Accordingly, that part of the order must be stricken.

## II

We briefly comment on two further matters.

### A.

In granting the petition on the narrow ground stated above, we have judiciously avoided the media's enticements to declare the trial court's order an unconditional prior restraint and to require the trial court articulate its reasons when it denies media coverage. Because rule 980 does not require a statement of reasons, we are unwilling to mandate that requirement in every case. Nonetheless we cannot ignore the important role the electronic media play in disseminating public information. Rule 980 recognizes that media access should be granted except where to do so will inter-

fere with the rights of the parties, diminish the dignity of the court, or impede the orderly conduct of the proceedings. Accordingly, in exercising its discretion whether to grant access, the court must consider the rule's criteria. If the court decides to deny access after evaluating the relevant factors, it would be helpful if it could explain its ruling so that any later challenge could be objectively analyzed. A silent record is of little assistance to an appellate court in determining the correctness of an order in this type of case. We therefore urge the trial court to briefly explain on the record why access is being denied. We believe the benefit to the justice system from this procedure will substantially offset any inconvenience to the trial court.

### B.

■ Our decision granting the petition reflects our rejection of the county's argument that the media have waived the legal infirmities in the order by proceeding to record with full knowledge of the limitation. We have reached this conclusion because of the following.

Each media representative in this case signed the form requesting coverage certifying to be bound by "any restriction imposed by the court" before the request was delivered to the judge. At oral argument we were told the preliminary hearing commenced shortly after the court signed the order imposing the limitation but before the forms were returned to the respective media representatives. Exactly when and under what circumstances the media learned of the limitation is unclear. In any event as soon as they became aware of the restriction, they contacted counsel who promptly advised the court of the media's legal position. These circumstances do not support a knowing waiver of the media's rights to challenge the order limiting the broadcasting of what had been recorded.

We wish to emphasize our conclusion in this case is based solely on this record and should not be construed as our holding that waiver is never applicable. It is clear there is no legal impediment to the media voluntarily and knowingly acquiescing to an order restricting their rights of coverage. In such circumstances they will be bound by their bargain.

To avoid a delayed challenge to a court's order in future cases representatives of the media should remain mindful that rule 980(b)(1) requires the request for media coverage to be "filed a reasonable time *before* the portion of the proceeding to be covered." (Italics supplied.) Where it can be reasonably accomplished the media must give the court adequate notice to allow the court sufficient time for a reasoned decision on whether access should be

granted and if so, what restrictions, if any, should be imposed. Conversely, with timely application the media will have the opportunity to either consent to the court-imposed restrictions or object before the proceeding starts, permitting prompt and meaningful appellate review.

## DISPOSITION

The petition for writ of mandate is granted. The parties to bear their respective costs for this proceeding.

Kremer, P. J., and Huffman, J., concurred.