Christina CROSSMAN, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of the Social Security Administration, Defendant.

No. 3:08cv01823 (MRK).

United States District Court, D. Connecticut.

Nov. 13, 2009.

Charles A. Pirro, III, Pirro & Church, South Norwalk, CT, for Plaintiff.

Ann M. Nevins, U.S. Attorney's Office, Bridgeport, CT, for Defendant.

### RULING AND ORDER

MARK R. KRAVITZ, District Judge.

Currently pending before the Court is a motion entitled "Plaintiffs' Petition for Hearing or Rehearing, En Banc, on Plaintiffs' Motions for Permission to File Unredacted Copies Under Seal of Each Plaintiff's Motions for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Rehearing, Each Plaintiff's Supporting Memorandum and Each Plaintiff's Appendix Thereto" [hereinafter, "Pl.'s Mot."] [doc. # 20]. The filing bears captions from seven different cases, including this one, and was apparently submitted on behalf of the plaintiff in each of them. According to the motion, all of the plaintiffs are represented by the same attorney, Charles A. Pirro, and all seek judicial review of a decision by the Social Security Administration to deny benefits under the Social Security Act. The motion asks the judges of the District Court of the District of Connecticut to adopt a policy:

which directs that all Social Security cases are exempt from electronic filing, all Social Security cases are private and unavailable for viewing by the public, and any Social Security case can be viewed only by the parties or their attorneys, unless the Court grants special permission to someone else who demon-

strates good cause for viewing the file of a Social Security case.

Pl.'s Mot. [doc. # 20] at 11.

This Court cannot, and will not, speak on behalf of the other judges of this District. And as Defendant rightly points out, neither the Local Rules nor the *Federal Rules of Civil Procedure* provides for an "en banc" review in the district courts. *See* Def.'s Mem. in Opp'n to Pls.' Mots. for Permission to File Unredacted Copies Under Seal [doc. # 23] at 3–4. However, insofar as *this* case is concerned, and for the reasons that follow, Plaintiff Cristina Crossman's motion is denied.

## I.

There is a strong presumption, deeply rooted in our common law tradition, that the public has a right of access to judicial proceedings. For criminal cases, this is reflected, to some degree, in the Sixth Amendment's guarantee of a "speedy and *public* trial," U.S. Const. amend VI (emphasis added), but the Supreme Court has long held that it is not only the rights of the accused that are protected by the presumption of access. *See, e.g., Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) ("Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole"). The Supreme Court has described the press and the public's right of access to criminal proceedings as protected by the First Amendment, and it has been recognized in nearly all aspects of criminal prosecutions. *See, e.g., El Vocero de Puerto Rico v. Puerto Rico,* 508 U.S. 147, 149, 113 S.Ct. 2004, 124 L.Ed.2d 60 (1993) (recognizing right of access to preliminary hearing); *Press–Enterprise Co. v. Superior Court (Press–Enterprise II ),* 478 U.S. 1, 13, 106 S.Ct. 2735, 92 L.Ed.2d 1

(1986) (same, for pretrial hearings); *Globe,* 457 U.S. at 602, 102 S.Ct. 2613 (same, during testimony of minor victims of sex crimes); *Press–Enterprise Co. v. Superior Court (Press–Enterprise I ),* 464 U.S. 501, 505, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (same, for *voir dire* proceedings); *Waller v. Georgia,* 467 U.S. 39, 47, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (same, for hearing on motion to suppress evidence); *see also Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 573, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ("From this unbroken, uncontradicted history [of open access to criminal trials], supported by reasons as valid today as in centuries past, we are bound to conclude that a presumption of openness inheres in the very nature of a criminal trial under our system of justice.") (plurality opinion). This First Amendment right, however, is not absolute, and it can be overridden by other considerations, such as the right of the accused to a fair trial or national security. But to order that proceedings be closed, a judge must make specific, on-the-record findings that "closure is essential to preserve higher values [than the public's right of access] and is narrowly tailored to serve that interest." *Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. 819.

In *Nixon v. Warner Communications, Inc.,* the Supreme Court recognized that the presumption of open access applies not just to the criminal proceedings themselves, but also to records admitted into evidence. *See* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). The Court noted that this right is not usually dependent on a showing of good cause. *Id.* at 597, 98 S.Ct. 1306 ("In contrast to the English practice, American decisions generally do not condition enforcement of this right [of access to judicial records] on a proprietary interest in the document or upon a need for it as evidence in a law-

suit") (citation omitted). Here, too, however, the Court recognized that "the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* at 598, 98 S.Ct. 1306.

To date, the Supreme Court has not yet had the opportunity to consider whether the qualified First Amendment right of access to criminal proceedings and records applies equally in the civil context, though in 1980 Chief Justice Burger did note, in *dicta,* that "historically both civil and criminal trials have been presumptively open." *Richmond Newspapers,* 448 U.S. at 580 n. 17, 100 S.Ct. 2814. But lower courts throughout the country have found that the same justifications for open access to criminal proceedings apply equally well in the civil context. *See, e.g., Publicker Indus. v. Cohen,* 733 F.2d 1059, 1061 (3d Cir.1984) ("[T]he First Amendment does secure a right of access to civil proceedings"); *Westmoreland v. CBS,* 752 F.2d 16, 23 (2d Cir.1984) ("[W]e agree with the Third Circuit in *Publicker Industries* ... that the First Amendment does secure to the public and to the press a right of access to civil proceedings in accordance with the dicta of the Justices in *Richmond Newspapers* "); *NBC Subsidiary, Inc. v. Superior Court,* 20 Cal.4th 1178, 86 Cal. Rptr.2d 778, 980 P.2d 337, 358 (1999) ("[E]very lower court opinion of which we are aware that has addressed the issue of First Amendment access to civil trials and proceedings has reached the conclusion that the constitutional right of access applies to civil as well as to criminal trials.").

The opinions regarding access to court *records* in civil cases have similarly upheld a qualified First Amendment right of access. *See, e.g., Hartford Courant Co. v. Pellegrino,* 380 F.3d 83 (2d Cir.2004)

("[T]he press and public possess a qualified First Amendment right of access to docket sheets" because, in part, "the ability of the public and press to attend civil and criminal cases would be merely theoretical if the information provided by docket sheets were inaccessible."); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157, 165 (3d Cir.1993) ("[T]here is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith"); *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir.1988) (holding that there is a constitutional right of access to "documents filed in connection with a summary judgment motion in a civil case"); *Matter of Continental Illinois Securities Litigation,* 732 F.2d 1302, 1308 (7th Cir.1984) (holding that the constitutional right of access to court records "appl[ies] to civil cases as well" as criminal).

■ Of course, this is not to say that sealing records is never appropriate; indeed, there can be (and often are) considerations of personal privacy, public safety, or a business's proprietary information, such as trade secrets or confidential research, that can trump the right of the public to access court records. But since the public's interest in open access is not always represented by the parties to litigation, the Second Circuit has cautioned district court judges to guard against overzealous or overbroad requests to seal records from public inspection. *See Video Software Dealers Assoc. v. Orion Pictures, Corp. (In re Orion Pictures Corp.),* 21 F.3d 24, 27 (2d Cir.1994) ("[I]n most cases, a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need."); *cf.* D. Conn. L. Civ. R.

5(e)(3) ("No document shall be sealed merely by stipulation of the parties").

Against this common-law and constitutional backdrop, just a few years ago Congress enacted the E–Government Act of 2002, Pub.L. No. 107–347. Although it mainly affected Executive Branch agencies, one Section of the E–Government Act applied to the federal judiciary. *See id.* § 205, *amended by* Pub.L. No. 108–281, § 1 (2004). Among other things, the Act requires each Circuit and district court to maintain its own website with certain specified information, *see id.* § 205(a), and provides further that all federals courts "shall make any document that is filed electronically publicly available online." *Id.* § 205(c)(1). However, Congress was not insensitive to the privacy concerns that accompany electronic access to court records; in addition to explicitly exempting from online access any record "not otherwise available to the public, such as documents filed under seal," *id.* § 205(c)(2), Congress also required the Supreme Court to promulgate rules "to protect privacy and security concerns relating to electronic filing of documents and the public availability ... of documents filed electronically." *Id.* § 205(c)(3). *See also* Pub.L. No. 108–281, § 1 (2004) (specifying that these rules should also cover documents "converted to electronic form."). Finally, the E–Government Act was explicit that whatever rules were promulgated, insofar as those rules permitted "the redaction of certain categories of information in order to protect privacy and security concerns," they must also permit "a party that wishes to file an otherwise proper document containing such information [to] file an unredacted document under seal." Pub.L. No. 107–347 § 205(c)(3)(A)(iv).

In response to this congressional mandate, Rule 5.2 was added to the *Federal Rules of Civil Procedure* in 2007. Subsection (a) lists certain particularly sensitive types of information (such as bank account numbers) that, barring a court order to the contrary, should be redacted from all filings; while other subsections make clear that courts may order that additional information be redacted for good cause shown or even for an entire filing to be submitted under seal. *See* Fed.R.Civ.P. 5.2(a), (d), (e). As required by the E–Government Act, subsection (f) of the Rule, entitled "Option for Additional Unredacted Filing Under Seal," provides that anyone "making a redacted filing may also file an unredacted copy under seal." Fed. R.Civ.P. 5.2(f). Particularly relevant to this case is the special treatment of Social Security cases described in subsection (c), entitled, "Limitations on Remote Access to Electronic Files; Social–Security Appeals and Immigration Cases." That section provides, in relevant part, that:

> Unless the court orders otherwise, in an action for benefits under the Social Security Act, ... access to an electronic file is authorized as follows:
>
> (1) the parties and their attorneys may have remote electronic access to any part of the case file, including the administrative record;
>
> (2) any other person may have electronic access to the full record at the courthouse, but may have remote electronic access only to:
>
>> (A) the docket maintained by the court; and
>>
>> (B) an opinion, order, judgment, or other disposition of the court, but not any other part of the case file or the administrative record.

Fed.R.Civ.P. 5.2(c). The Advisory Committee's note explains that this differential treatment of Social Security cases is warranted by "the prevalence of sensitive information and the volume of filings." Fed. R.Civ.P. 5.2 advisory committee's note.

However, the Committee was clear that "the rule contemplates ... that nonparties can obtain full access to the case file at the courthouse." *Id.*

Once Rule 5.2 went into effect, the District of Connecticut's Local Rules were amended to incorporate the changes. New Rule 5(e) of the Local Rules deals exhaustively with the issues raised by the case law on open access to court proceedings and records and explains what can and cannot be shielded from public view, and it lays out procedures for parties to follow if they would like to request (or oppose) that records be sealed; for the judge, in adjudicating such requests; and the Clerk, in handling sealed records. *See* D. Conn. L. Civ. R. 5(e).

## II.

■ As the previous discussion is intended to illustrate, the policy urged by Ms. Crossman's attorney—a blanket prohibition on public access to all Social Security cases, "unless the Court grants special permission to someone [ ] who demonstrates good cause," Pl.'s Mot. [doc. # 20] at 11—would be a dramatic departure from long-standing tradition, constitutional jurisprudence, and the rules of the federal courts. In support of this rather extraordinary proposition, Mr. Pirro's primary argument is that certain aspects of the District of Connecticut's Electronic Case Filing Policies and Procedures [hereinafter, "ECF Procedures"] conflict with his duty to vigorously represent his clients. For example, according to Mr. Pirro, the ECF Procedures:

> direct[ ] counsel to "exercise caution" when filing pleadings or memoranda which contain "sensitive information" such as "medical records, treatment and diagnosis," "employment history," and "individual financial information." This directive creates an unsolvable dilemma

for attorneys in Social Security cases, since there is no middle ground. "Sensitive information" must either be included in documents filed with the Court, or it must be excluded or redacted, yet each Plaintiff's case cannot be proven unless all of the "sensitive information" is included. Consequently, in every Social Security case, the Plaintiff's attorney must ignore the admonition to "exercise caution" and must include the "sensitive information" in all of the Motions, Memoranda and Appendices filed in this Court.

Pl.'s Mot. [doc. # 20] at 6–7. Moreover, simply redacting the "sensitive information," Mr. Pirro argues, "would make the documents incomprehensible," such that "Plaintiff cannot possible prove her case[ ] or assert her claim to Social Security benefits unless[ ] she can file an unredacted copy of the Memorandum." *Id.* at 8. This clearly puts a Social Security claimant in an even more difficult position than her attorney: she must choose between keeping private her "sensitive information" and pursuing the disability benefits to which she may be entitled.

The Court agrees that this would be an "impossible dilemma"—if it were true. Mr. Pirro's assertion that "there is no middle ground" is simply incorrect. As discussed previously, the *Federal Rules of Civil Procedure* provide all individuals in this situation a clear avenue to both protect their privacy and advance their claims, while also taking into account the public's qualified First Amendment right of access: Rule 5.2(f) permits anyone who submits a redacted, public version of a filing to also submit an unredacted copy under seal. *See* Fed.R.Civ.P. 5.2(f). This provision was explicitly required by the E–Government Act of 2002, *see* Pub.L. No. 107–347 § 205(c)(3)(A)(iv), and is further reflected in Local Rule 5(e)'s precise instructions

and explanations on what parties and attorneys in this situation can do to ensure that all interests are sufficiently protected. *See* D. Conn. L. Civ. R. 5(e). In short, the dilemma from which Mr. Pirro argues is illusory.

Mr. Pirro's other arguments are similarly without merit. He argues that a blanket sealing order "would relieve the Clerk's Offices of the burden of reviewing any document filed in Social Security case to determine if the document or any portion of it should have been redacted," Pl.'s Mot. [doc. # 20] at 11, but the Clerk's Office has no such burden. *See* Fed. R.Civ.P. 5.2 advisory committee's note ("The clerk is not required to review documents filed with the court for compliance with this rule. The responsibility to redact filings rests with counsel and the party or nonparty making the filing"); *see also* Fed.R.Civ.P. 5.2(h) ("A person waives the protection of Rule 5.2(a) as to the person's own information by filing it without redaction and not under seal"). He also asserts that his preferred policy "would relieve the Clerk's Offices of the burden of handling sealed documents in Social Security cases," Pl.'s Mot. [doc. # 20] at 11. But it is difficult to see the logic in this argument, since a blanket order sealing Social Security cases would result in *more* sealed documents, not fewer.

Finally, Mr. Pirro chastises the Defendant for choosing "to oppose the 'special treatment' of Social Security cases recommended by the Judicial Conference Committee," Pl.'s Mot. [doc. # 20] at 9, without acknowledging that Social Security cases are already afforded "special treatment." Subsection (c) of Rule 5.2 provides that no one, other than the parties and their attorneys, may have remote access to any part of the case file in Social Security cases except the docket sheet and opinions of the court. *See* Fed.R.Civ.P. 5.2(c). In order to review any other part of the unsealed case file, non-parties have to physically go to the courthouse where it is stored. Thus, even if Mr. Pirro's clients choose not to redact their filings at all, they are still provided some degree of privacy through the relative inaccessibility of the case file. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 764, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ("Plainly there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information."); *see also* Arminda Bradford Bepko, Note, *Public Availability or Practical Obscurity: The Debate over Public Access to Court Records on the Internet,* 49 N.Y.L. Sch. L.Rev. 967 (2005).

## III.

In sum, there are ample protections and procedures in place for Mr. Pirro to protect Ms. Crossman's privacy while still advancing her Social Security claim that would not threaten the public's qualified First Amendment right to access court records. Therefore, the Court will not permit a blanket order allowing Ms. Crossman to file every document under seal. Accordingly, Ms. Crossman's Motion [doc. # 20] is DENIED, and the previous Order granting Plaintiff's Motion to Seal [doc. # 19] is VACATED. However, if Ms. Crossman can identify particular portions of individual documents that she believes should be shielded from public view, she may seek individual orders relating to those documents. In order to do so, Ms. Crossman must make a separate motion in accordance with District of Connecticut Local Rule 5(e), specifying precisely what she wishes to be kept under seal and making a particularized showing of good cause

as to why the Court should depart from the strong presumption against sealing any court records to public inspection. Ms. Crossman shall make any such motion to seal particular portions of specific documents no later than November 30, 2009. If Ms. Crossman fails to move on or before that date, the Court shall order the documents filed thus far to be unsealed.

IT IS SO ORDERED.