In re Application of CBS, INC., Applicant-Appellant.

UNITED STATES of America, Plaintiff,

v.

Anthony SALERNO, et al., Defendants-Appellees,

Roy L. Williams, Appellee.

No. 1651, Docket 87–6177.

United States Court of Appeals, Second Circuit.

Argued Aug. 13, 1987.

Decided Sept. 16, 1987.

Laura V. Jones, New York City (Ronald E. Guttman and Douglas P. Jacobs, New York City, of counsel), for applicant-appellant.

Bruce C. Houdek, James, Millert, Houdek, Tyrl & Sommers, Kansas City, Mo., for appellee Roy L. Williams.

John H. Jacobs, New York City (Byron Neal Fox, Michael Washor, Albert Guadelli, Fred Hafetz, Jay Goldberg, Robert Ellis, Edward Mike Shaw, Henry Putzel, II, Gustave Newman and Patrick Wall, of counsel), for defendants-appellees Anthony Salerno, et al.

Before WINTER and MAHONEY, Circuit Judges, and RE,[*] Chief Judge.

WINTER, Circuit Judge.

CBS Inc. appeals from the denial of its application to copy for possible broadcast a videotaped deposition of a witness previously shown to a jury in open court during the ongoing trial in *United States v. Salerno*, No. 86 Cr. 245 (MJL) (S.D.N.Y. filed Sept. 19, 1986). At issue is a videotape of deposition testimony of Roy L. Williams, a former General President of the International Brotherhood of Teamsters now serving a federal prison sentence on unrelated

---

[*] The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

charges. Because Williams was ill, he could not appear as a live witness at the trial, in which he was named as an unindicted co-conspirator. His testimony was taken in a prison hospital and consisted largely of admissions that he had allowed himself to be controlled by organized crime. Judge Lowe denied CBS's application on the ground that the common law right to inspect and copy judicial records for possible broadcast does not apply to the videotaped deposition of a witness whose live testimony was precluded by severe illness. In the alternative, the district court held that even if the common law right did apply under such circumstances, the privacy interests of the videotaped deponent were sufficiently "extraordinary" to overcome the strong presumption in favor of the common law right, 663 F.Supp. 1011. Because we hold that the common law right to inspect and copy judicial records applies to videotaped depositions of witnesses and because we further hold that Williams' privacy interests were insufficient to overcome that right, we reverse.

I

As we noted in *In re NBC*, 635 F.2d 945, 949 (2d Cir.1980) (*"Myers"*), "[t]he existence of the common law right to copy and inspect judicial records is beyond dispute." *See also Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). In *Myers*, the district court had allowed broadcasters to copy for possible broadcast videotaped evidence introduced at the trial of Abscam defendants. In upholding that decision, we held that the common law right extended to nondocumentary evidence such as video and audio tape, 635 F.2d at 950, and that "[o]nce the evidence has become known to members of the public, including representatives of the press, through their attendance at a public session of court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction." *Id.* at 952.

In the present case, the district court believed that application of the reasoning of *Myers* to a videotaped deposition taken under Fed.R.Crim.P. 15 would be exalting "form over substance" because the videotapes in the Abscam cases were "real evidence" whereas the videotape now in issue was analogous to live testimony. The district court concluded that the deposition room was "simply an extension of the southern district courtroom" and noted the possibility of witnesses obscuring the truth in anticipation of a broadcast to a television audience. The court then concluded that the rule against the filming of trials applies with equal force to videotaped depositions played at trial. We disagree.

*Myers* held that the common law right to inspect and copy judicial records applies to "*any* item entered into evidence at a public session of a trial," excluding only those items entered under seal, but not distinguishing evidence on the basis of whether it was real or testimonial. 635 F.2d at 952 & n. 4 (emphasis added). Moreover, the rules prohibiting cameras in courtrooms, *see* Fed.R.Crim.P. 53; S. & E.D.N.Y.Gen.R. 7, do not purport to create an exception to that right. These rules forbid all filming *in courtrooms* whether intended for private or for public use and whatever the subject. The reasons generally given to justify these rules—judicial time needed for oversight; the need to sequester juries that they do not see televised segments of a trial from which they had been excluded; effects on witnesses, jurors, lawyers, judges and court administrators; and difficulty in selecting an impartial jury for a retrial—have only the most limited application in the case of a deposition. Indeed, because videotaping of a deposition with a view to public use at trial is clearly permissible under Fed.R.Crim.P. 15, the sole issue before us is whether it may be broadcast as well as shown to a jury and courtroom audience.

Given the conceded permissibility of videotaping a deposition and the lack of a rule prohibiting the copying of such evidence for possible broadcast, the question is whether we should create an exception to

the common law right to inspect and copy judicial records for videotaped depositions. We conclude we should not.

■ Such an exception certainly cannot be grounded upon some generalized right of privacy enjoyed by participants in judicial proceedings because no such right exists. Absent exceptional circumstances, one who testifies at a trial testifies before the public. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (constitutional right to attend criminal trials); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (same); *Westmoreland v. CBS, Inc.*, 752 F.2d 16, 22–23 (2d Cir.1984) (recognizing first amendment right of public access to civil trials). The public may include representatives of the press, and in many jurisdictions, including at least one state in this circuit, *see* Connecticut Code of Judicial Conduct, Canon 3 (1986), representatives of the broadcast media are permitted to record and broadcast ongoing judicial proceedings. *See Westmoreland*, 752 F.2d at 18 (noting that forty-one states permit some form of audiovisual coverage of state trial and/or appellate proceedings).

The analogy between a videotaped deposition introduced in evidence and live testimony does not withstand scrutiny. Whatever disruptive effects the physical presence of cameras and recording equipment may be thought to have on trials, the copying and rebroadcast of a videotaped exhibit can have no such effect. The need for judicial oversight of cameramen or other technicians is minimal; there is no danger of the jury being exposed to inadmissible evidence or argument; and depositions are taken in private.

The district court speculated about the psychological effect upon witnesses and other participants of the knowledge that their testimony might be broadcast. In particular, Judge Lowe was concerned about witnesses becoming "actors" who will distort their testimony. We believe those apprehensions to be exaggerated. Newsworthy testimony is likely to be widely disseminated whether or not it is videotaped, and courtroom witnesses are thus subject to similar pressures. It seems highly unlikely that a witness forced to testify in a courtroom packed with representatives of the media will be less apprehensive and less prone to distortion and perjury than one who testifies in a room occupied only by lawyers, perhaps a judge and a single camera.

Because the videotape may in fact be more accurate evidence than a transcript, moreover, its availability to the media may enhance the accurate reporting of trials. Transcripts lack a tone of voice, frequently misreport words and often contain distorting ambiguities as to where sentences begin and end. Videotaped depositions thus convey the meaning of testimony more accurately and preserve demeanor evidence as well. Should posturing on the part of witnesses or, more likely, lawyers, occur, redaction of such material prior to the videotape exhibit's admission into evidence is possible. Accordingly, there is no reason to carve out a general exception to the *Myers* rule for videotaped depositions.

## II

■ In *Myers* we held that the presumption in favor of the public right to inspect and copy judicial records was so strong that only the "most extraordinary circumstances" or the "most compelling circumstances" would justify restricting that right "[w]hen physical evidence is in a form that permits inspection and copying without any significant risk of impairing the integrity of the evidence or interfering with the orderly conduct of trial." *Myers*, 635 F.2d at 952. The district court held that even if the common law right of access to judicial records did apply to the videotaped deposition, the privacy interests of the ill witness who had been compelled to testify were sufficiently extraordinary to preclude press access. Again we disagree.

Although the determination of whether circumstances exist that justify a restriction on access to evidence in a particular case is committed to the trial court's discretion, *Nixon v. Warner Communications, Inc.*, 435 U.S. at 589, 98 S.Ct. at 1308, that discretion is limited by the strength of the presumption of public access. We believe that the circumstances relied upon by the

district court in the present case do not overcome that presumption. Although we sympathize with the district court's concern for preserving the dignity of a witness, we see nothing sufficiently compelling in the facts that Williams appeared ill in the videotape and was compelled to testify concerning his involvement in illegal activities. Old age and ill health are neither uncommon nor generally a cause of severe embarrassment. His situation is simply not analogous to, say, that of a victim of a slasher. So far as the content of Williams' testimony is concerned, he is not an innocent bystander subject to public embarrassment solely because of the acts of others. *See In re KSTP Television*, 504 F.Supp. 360 (D.Minn.1980) (videotapes made by kidnapper of blindfolded and bound rape victim). Rather, the circumstances in which he finds himself are solely the result of his criminal acts.

Reversed.