GROVE FRESH DISTRIBUTORS, INCORPORATED, Plaintiff–Appellee,

v.

EVERFRESH JUICE COMPANY and Hugo Powell, Defendants–Appellees.

GROVE FRESH DISTRIBUTORS, INCORPORATED, Plaintiff–Appellee,

v.

JOHN LABATT LIMITED, A Canadian Corporation, et al., Defendants–Appellees.

Appeal of AD HOC COALITION OF IN DEPTH JOURNALISTS, Intervenor–Appellant.

GROVE FRESH DISTRIBUTORS, INCORPORATED, Plaintiff,

v.

EVERFRESH JUICE COMPANY and Hugo Powell, Defendants–Appellees.

Appeal of Leslie DONLEY, Barry Shore, Sybil Shore, et al., Intervenors–Appellants.

Nos. 92–4038, 93–2438.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1994.

Decided May 12, 1994.

Dale R. Crider, Warren S. Radler, Rivkin, Radler & Kremer, John P. Messina, Chicago, IL, for plaintiff-appellee.

Jeffrey E. Stone, Bruce H. Weitzman, David J. Stetler, Lazar Pol Raynal (argued), McDermott, Will & Emery, Chicago, IL, for Everfresh Juice Co., Hugo Powell, John Labatt Ltd.

Daniel G. Litchfield, Steven M. Kowal, Burditt & Radzius, Chicago, IL, for American Citrus Products Corp., Henry Lang.

John S. Elson, Karen Taylor, Jack Doppelt, Chicago, IL, Mindy S. Trossman, Evanston, IL, for Ad Hoc Coalition of In Depth Journalists.

Kristi L. Browne, Lawrence Walner (argued), Julie L. Murphy, Robert J. Walner, Walner & Associates, Chicago, IL, for Leslie Donley, Barry Shore, Sybil Shore, Don Shifris, Lorraine Wallace, Thomas Scorzo, Pat Gordon, Catherine Thomas, Sam Gordon, Michele Chroman, Melissa Chroman. .

Before BAUER, COFFEY, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

This appeal requires us to determine the rights of third parties who wish to intervene in pending litigation for the limited purpose of obtaining access to documents which have been shielded from public scrutiny either by seal or by a protective order. At the heart of this dispute are a pair of lawsuits filed by Grove Fresh Distributors, Inc. against various of its competing orange juice manufacturers. The lawsuits are based on allegations that the defendants engaged in a. conspiracy to unlawfully adulterate and misbrand orange juice in violation of federal unfair competition laws, Food and Drug Administration regulations, and the federal Racketeer Influenced and Corrupt Organizations statute (RICO). 18 U.S.C. §§ 1961 *et seq.* In the first of these cases, filed in 1989 (the " '89 case"), the district court issued a protective order limiting Grove Fresh's ability to disclose information obtained from the defendants by virtue of the discovery process which the defendants classified as confidential. In a subsequent lawsuit involving similar claims, filed in 1990 (the " '90 case"), the district court sealed the entire court file.

Two different sets of intervenors requested leave to intervene in the cases for the purposes of modifying the protective order in the '89 case and vacating the seal in the '90 case. The first group of intervenors are plaintiffs in a separate group of class action cases. Also citing unlawful adulteration and labelling practices, these intervenors ("Consumers") are suing many of the same orange juice manufacturers for consumer fraud and breach of warranty. The Consumers wish to spare the time and expense of a separate pre-trial discovery process by obtaining access to the discovery produced in the Grove Fresh cases. They believe that due to the factual similarity between their case and the Grove Fresh cases, much of the relevant material will be the same. The trial court rejected the Consumers' motion to intervene because the court believed that they lacked standing and that they would not suffer any prejudice from the denial.

The second group of intervenors, The Ad Hoc Coalition of In-depth Journalists ("Coalition") represent a group of professional journalists. Their attempt to vacate the seal in the '90 case and modify the protective order in the '89 case was denied by the district court on November 20, 1992. In its opinion, the court recognized that the Coalition had a right to any court decisions in the case and any documents upon which the court relied in making its decisions. Despite this acknowledged right, for reasons of expedience, the court refused to grant access to the Coalition until the proceeding was completed. The district court also denied the Coalition's motion to modify the protective order in the '89 case because in its view the Coalition had no standing nor any rights on the merits to have access to materials which were part of the discovery process.

The '89 case was dismissed pursuant to the defendants' successful motion for summary judgment on February 21, 1992. In late April of 1993, the '90 case was dismissed pursuant to a settlement among the litigants. The Coalition renewed its request to vacate the seal on June 1, 1993. The district court denied the request.

The differences between the two types of intervenors require us to analyze their claims separately. We begin with the Consumers.

## I.

We address, as a preliminary matter, our appellate jurisdiction here because in their briefs, the defendants in the Grove Fresh case, The Everfresh Juice Company and John Labatt Limited, suggest that the order denying the Consumers' motion was not an appealable order. At oral argument, counsel for the defendants acknowledged that the proceedings in the two cases are now complete and it is not clear whether they adhere to their original position on jurisdiction. Nevertheless even if proceedings below were not complete, our decisions make it evident that an order granting or refusing to grant access in favor of an intervening party is appealable under the collateral order doctrine. *Wilk v. American Medical Ass'n,* 635 F.2d 1295 (7th Cir.1980) (refusing to modify a protective order); *American Tel. &*

*Tel. Co. v. Grady,* 594 F.2d 594 (7th Cir.1978) (modifying a protective order), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). Thus, even though the order did not end the litigation on its merits, the order was immediately appealable. Everfresh and John Labatt also suggest without elaboration that the Consumers lacked standing to intervene in this case. It is apparent, however, that intervention is the procedurally appropriate course for third-party challenges to protective orders. *See id.; United Nuclear Corp. v. Cransford Ins. Co.,* 905 F.2d 1424 (10th Cir.1990), *cert. denied,* 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989). Hence, Everfresh and John Labatt's jurisdictional challenges are unavailing.

■ Everfresh and John Labatt also argue that because the Consumers failed to serve them with its motion to intervene, the motion was properly denied. This claim ignores the facts of the case. As originally filed, the motion to intervene was directed only to the '90 case. Due to the seal, which included within its terms the docket sheet, the identities of the defendants and their counsel of record were unknown, and they, therefore, could not be served. The Consumers then amended their motion to include the '89 case, but the court denied the motion before the Consumers had a chance to serve the defendants. Because the failure to serve the defendants in this case was justifiable, Everfresh and John Labatt's procedural challenge is also without merit.

■ As for the merits of the district court's decision, we find our decision in *Wilk* to be dispositive. In *Wilk,* five chiropractors sued various medical organizations, alleging a conspiracy to violate federal antitrust laws. The State of New York then filed a federal antitrust suit against many of the same organizations. Though the causes of action in the two suits were not identical, both were directed at similar wrongdoings. At the time of the second suit, discovery in the first action was nearly concluded but the court had entered a protective order prohibiting the plaintiffs from revealing the contents of any materials which the defendant had labelled as confidential. The State of New York requested that the protective order in the first case be modified so as to allow it access to discovery materials. The district court denied the motion for intervention.

Reversing the district court, we held that where a third party wishes to modify a protective order so as to avoid duplicative discovery in collateral litigation, policy considerations favoring the efficient resolution of disputes justify modification unless such an order would tangibly prejudice substantial rights of the party opposing modification. *Wilk,* 635 F.2d at 1299. Even if such prejudice is demonstrated, the court has broad discretion in determining whether the injury outweighs the benefits of modification. *Id.*

Applying this test to the facts in *Wilk,* we recognized that as a bona fide litigant, New York had a legitimate basis for its request, and that because the allegations in the two matters were virtually identical, much of the material produced in the first action would be relevant and eventually discoverable. Thus, we concluded that New York was presumptively entitled to access to the *Wilk* discovery on the same terms as the *Wilk* plaintiffs. On remand, the burden was placed on the parties opposing modification to establish that the intervenors would not be entitled to certain materials. *Id.* at 1301.

The reasoning of *Wilk* applies with equal force here and we therefore remand the case to the district court with directions to reconsider, in light of *Wilk,* the Consumers' motion to intervene. Our holding in no way diminishes the defendants' rights to limit the Consumers' access so as to retain protection for items which would ordinarily not be discoverable due to privileges or irrelevance. Moreover, if the district court finds that there are legitimate secrecy concerns, the seal and protective order need only be modified to include the Consumers within their parameters.

## II.

The Coalition argues in its appeal that the district court's order of November 20, 1992 presents three issues for review. First,

there is the question of whether the district court's decision to postpone access to the '90 court file after the court had acknowledged the Coalition's rights was proper. Secondly, the Coalition challenges the district court's decision finding that the journalists lacked standing to modify the protective order. Lastly, there is the issue of whether the court should have issued a decision on the record justifying the seal.

■ The public's right of access to court proceedings and documents is well-established. *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *Nixon v. Warner Communications,.* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Public scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Though its original inception was in the realm of criminal proceedings, the right of access has since been extended to civil proceedings because the contribution of publicity is just as important there. *Smith v. United States Dist. Court,* 956 F.2d 647, 650 (7th Cir.1992). In fact, mistakes in civil proceedings may be more likely to inflict costs upon third parties, therefore meriting even more scrutiny. *Richmond Newspapers,* 448 U.S. at 596, 100 S.Ct. at 2838 (Brennan, J., concurring).

■ Justified originally by common-law traditions predating the enactment of our Constitution, the right of access belonging to the press and the general public also has a First Amendment basis. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982). Neither the common-law nor the constitutional right is absolute. More general in its contours, the common-law right of access establishes that court files and documents should be open to the public unless the court finds that its records are being used for improper purposes. *United States v. Corbitt,* 879 F.2d 224, 228 (7th Cir.1989). The First Amendment presumes that there is a right of access to proceedings and documents which have "historically been open to the public" and where the disclosure of which would serve a significant role in the functioning of the process in question. *Id.* This presumption is rebuttable upon demonstration that suppression "is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise,* 464 U.S. at 510, 104 S.Ct. at 824. The difficulties inherent in quantifying the First Amendment interests at issue require that we be firmly convinced that disclosure is inappropriate before arriving at a decision limiting access. Any doubts must be resolved in favor of disclosure. *In re Continental Illinois Securities Litigation,* 732 F.2d 1302, 1313 (7th Cir.1984). Though it is not clear whether the district court based its decision on constitutional or common-law grounds, it did find that the Coalition had a right to certain documents in the file. We must decide only whether its decision to postpone access was proper.

■ In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous. *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Continental Illinois Securities Litigation,* 732 F.2d at 1310. The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression. *Chicago Council of Lawyers v. Bauer,* 522 F.2d 242, 250 (7th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976). "[E]ach passing day may constitute a separate and cognizable infringement of the First Amendment." *Nebraska Press Ass'n v. Stuart,* 423 U.S. 1327, 1329, 96 S.Ct. 251, 254, 46 L.Ed.2d 237 (Blackmun, Circuit Justice 1975).

■ In this case, vacating the seal presented the district court with a peculiar set of problems. In reliance on the seal, the parties had filed documents which otherwise would not be part of the public record. As the district court correctly noted, until admitted into the record, material uncovered dur-

ing pretrial discovery is ordinarily not within the scope of press access. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17 (1984). Thus, underlying the district judge's decision to postpone access to the '90 case file was a concern that the effort involved in going through the court file to ascertain which documents were in fact part of the public record was not worth the court's time. We are sensitive to the court's concerns. The time and effort expended in examining the court file to ascertain whether particular documents have been made part of the public record either because the court has relied on them or because the litigants have offered them as evidentiary support is a burden which the district courts should not have to bear. Nevertheless, as we have stated, the right of the press to obtain timely access to judicial decisions and the documents which comprise the bases of those decisions is essential. We conclude, therefore, that once the press has adequately demonstrated that its access has been unjustifiably limited, but where there are legitimate concerns of confidentiality, the burden should shift to the litigants to itemize for the court's approval which documents have been introduced into the public domain. We believe that such an approach provides a legitimate means of reconciling the press's rights with the time constraints facing the trial courts.

With respect to the protective order entered in the '89 case, the district court determined that because the Coalition was not entitled to discovery materials, the Coalition did not have standing to challenge the protective order. The Coalition does not contest the fact that discovery materials are not within the scope of their right of access. Rather, the Coalition believes the defendants are abusing the protective order to prevent the disclosure of harmful information which would otherwise be disseminated. More specifically, the Coalition contends that the defendants are classifying documents as confidential purely because they contain information which if released could harm their own business reputation. The Coalition argues that this is an insufficient justification for protection and constitutes a violation of the terms of the protective order and Rule 26(c) of the Federal Rules of Civil Procedure.

*Brown & Williamson v. FTC*, 710 F.2d 1165, 1179–80 (6th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984).

■ Although the media's right of access does not extend to information gathered through discovery that is not part of the public record, the press does have standing to challenge a protective order for abuse or impropriety. *In re Continental Illinois Securities Litigation*, 732 F.2d 1302 (7th Cir. 1984); *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 354 (11th Cir.1987). Thus to the extent the Coalition's motion was denied for a lack of standing, we reverse the decision of the district court and remand it with instructions to consider the Coalition's allegations concerning abuse of the protective order.

Finally, we are asked to pass on the propriety of the court's failure to issue along with its decision to seal the '90 case file an explanation detailing the court's findings and reasoning. The Supreme Court has stated that when a court finds that the presumption of access has been rebutted by some countervailing interest, that "interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1985). Appellate courts have on several occasions emphasized that upon entering orders which inhibit the flow of information between the courts and the public, district courts should articulate on the record their reasons for doing so. *In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1313 n. 17 (7th Cir.1984); *United States v. Edwards*, 672 F.2d 1289, 1294 (7th Cir.1982); *In re State–Record Co.*, 917 F.2d 124 (4th Cir.1990) ("[W]ithout specific findings of fact we cannot adequately review closure orders."). In this circuit, we have yet to hold that where such a description is lacking, reversal is *per se* appropriate. *See Continental Illinois Securities Litigation*, 732 F.2d at 1313 (holding that order granting access did not merit reversal despite insufficiently specific findings but noting that findings on the record are more crucial for orders denying access). In light of our disposition of this

case, we need not adopt such a rule here. We ask only that in reaching its decision in this matter on remand that the district court specify the basis for its conclusions.

## III.

We sympathize with the burdens placed on trial judges today. Nevertheless, where the rights of the litigants come into conflict with the rights of the media and public at large, the trial judge's responsibilities are heightened. In such instances, the litigants' purported interest in confidentiality must be scrutinized heavily. Accordingly, we remand case # 93–2438 to the district court for proceedings consistent with this court's decision in *Wilk*. Case # 92–4038 is also remanded for proceedings consistent with this opinion.