UNITED STATES of America, Plaintiff,

v.

James R. BERGER, Defendant.

No. 96–30036.

United States District Court,
C.D. Illinois,
Springfield Division.

Jan. 16, 1998.

---

Patrick J. Chesley, Springfield, IL, for Plaintiff.

Ronald J. Stone, Springfield, IL, for Defendant.

### *OPINION*

RICHARD MILLS, District Judge.

The Governor's videotaped deposition.

The sequel.

And like any competent sequel, a little factual background information is necessary.

### I.

Defendant has been charged with sixteen counts of mail fraud and with one count of misapplication of government property. During the midst of the trial, a juror became ill. Rather than making use of the last available alternate juror, the Court and the parties agreed to recess the trial until the juror was able to return to Court.[1]

A problem with this plan arose in that Defendant had anticipated calling Illinois Governor Jim Edgar as a witness the next day. The Governor had a long planned three week official trade mission to India and, therefore, would only be available to testify the following day—his final day before departure. In order to alleviate this conflict, the parties stipulated to allow the Governor to be deposed *via* videotape pursuant to Federal Rule of Criminal Procedure 15(a) and by that means, would preserve the Governor's deposition for use at trial at Defendant's discretion. However, until Defendant decided to play the videotape to the jury, the videotape was to remain in the possession of the reporting service which had videotaped the Governor's deposition and was to be treated as a sealed matter.[2] Furthermore, members of the public were prohibited from attending the Governor's deposition.

Although this procedure was agreeable to both the parties and the Court, it created quite a hullabaloo with the media. Obviously, the press believed that a sitting Governor's testimony in a federal criminal trial carried some degree of newsworthiness and,

---

1. And a good thing, for subsequently the last remaining alternate juror had to be utilized for the balance of this extended trial!

2. However, the Court permitted both Defendant and the Government to receive a copy of the videotape.

therefore, petitioned the Court to allow them to attend the taping of the Governor's deposition in person rather than being forced to wait until the videotape was played to the jury. The Court denied the press' petition and ruled that the videotaping of the Governor's deposition and the videotape itself would be a sealed matter until the tape was actually presented as evidence at trial before the jury. *United States v. Berger,* 990 F.Supp. 1051 (C.D.Ill.1997).

After the taping of the Governor's deposition, the Court met with the parties in chambers. At that meeting, the Court broached the issue of the public's access to the transcript and videotape should Defendant decide to offer it as evidence in his case-in-chief. The parties and the Court agreed that once played to the jury, both the transcript and the videotape itself would be open to the public for inspection and copying.

Upon that backdrop, we begin the sequel.

## II.

After the trial resumed, Defendant did, in fact, decide to offer the Governor's deposition as evidence in his case-in-chief, and thus, it was played to the jury. During the morning break, counsel for Defendant approached the Court and inquired as to the Court's intentions with respect to keeping the videotape under seal. Defendant's counsel related that the Governor's staff had requested that the videotape be placed back under seal once it was viewed by the jury. At a meeting in chambers, Defendant asserted that it was also his position that the videotape be placed back under seal once it had been presented to the jury.

Upon returning to open Court (but out of the jury's presence) counsel for the Governor asked to be heard and moved the Court for a protective order which placed the videotape back under seal once it was played to the jury. Alternatively, counsel for the Governor requested the Court to stay our ruling on the issue in order to allow time to research the issue and file an appropriate motion.[3]

## III.

After weighing the competing interests and considering the Seventh Circuit's view of the issue, the Court finds that the public should have access to the videotape.

In reaching this conclusion, the Court is cognizant that our decision is contrary to that reached by various Courts of Appeal.[4] The Fifth, Sixth, and Eighth Circuits have all held that the public does not have a right of access to tapes played in court. *See Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 427 (5th Cir. Unit. A 1981)(holding no First Amendment right to copy tapes where transcripts provided and tapes played in open court); *see also United States v. Beckham,* 789 F.2d 401, 409 (6th Cir.1986) (holding no constitutional right to copy tapes played in open court); *see also United States v. McDougal,* 103 F.3d 651, 656 (8th Cir.1996)(holding no common law or First Amendment right of public access to videotape of President's testimony).

On the other hand, the Second Circuit has found that in the absence of "extraordinary circumstances," the public has a common law right to inspect and copy videotaped depositions used at trial. *In re Application of CBS, Inc.,* 828 F.2d 958, 959–60 (2nd Cir. 1987); *In re Application of Nat'l Broadcasting Co., Inc.,* 635 F.2d 945, 949 (2nd Cir. 1980). Likewise, the Ninth Circuit has held that there is a "strong presumption in favor

---

**3.** The Court digresses here for a moment to note that although two full weeks passed between the taping of the Governor's deposition and the playing of the videotape to the jury, no one made any objection to the release of the videotape known to the Court until the day on which the videotape was played to the jury. In fact, the first time that the Court was made aware of this issue was after the jury had viewed the portion of the videotape containing Defendant's direct examination of the Governor. This delay in making an objection known to the Court is exacerbated by the fact that in addition to counsel for Defendant being

present at the Governor's deposition, Chief Counsel for the Governor and the Governor's personal counsel both attended the deposition. Yet, no one said a word about placing the videotape back under seal until an hour before the public was to be given access to the transcript and the videotape. The untimeliness of the objection forced the Court to weigh an issue of significant Constitutional magnitude in the short space of an hour.

**4.** The Court has been unable to find an opinion by the Seventh Circuit which is directly on point to the issue *sub judice.*

of copying access." *Valley Broadcasting Co. v. United States Dist. Court,* 798 F.2d 1289, 1294 (9th Cir.1986).

■ In the Seventh Circuit, there is also a strong presumption in favor of public access. *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir.1994); *United States v. Guzzino,* 766 F.2d 302, 304 (7th Cir.1985); *In re Continental Illinois Securities Litigation,* 732 F.2d 1302, 1313 (7th Cir.1984); *United States v. Edwards,* 672 F.2d 1289, 1294 (7th Cir.1982). "This presumption is rebuttable upon demonstration that suppression 'is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Grove Fresh Distributors,* 24 F.3d at 897, quoting *Press–Enterprise Co. v. Superior Court of California, Riverside County,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). However, "[a]ny doubts must be resolved in favor of disclosure." *Grove Fresh Distributors,* 24 F.3d at 897; *In re Continental,* 732 F.2d at 1313.

### IV.

In this Court's opinion, two questions must be answered in resolving the issue at hand. *First,* is the videotape more akin to a camera in the courtroom which, if the Court allowed public access to inspect and copy the videotape, would run afoul of Federal Rule of Criminal Procedure 53,[5] or is it more similar to a piece of evidence (*e.g.,* an audio tape) which is generally open for public inspection once it has been admitted at trial. *Second,* would Defendant suffer any prejudice if the videotape is disclosed or is there any "higher value" than the public's right of access which would mitigate against making the videotape open for public inspection and copying.

The Court believes that the videotape is more akin to a judicial record than a violation of the ban of cameras in a federal courtroom. No one took any photographs in the courtroom; nor did anyone broadcast live *via* radio or television any judicial proceeding occurring within the courtroom. Moreover, there was no camera or satellite feed emanating from the courtroom either as the Governor's deposition occurred or as the videotape was played to the jury.

■ On the contrary, Defendant decided to preserve the Governor's deposition by videotaping it. The Governor's deposition differed from the "standard" deposition (*i.e.,* questions and answers transcribed by a court reporter) only in its form. Video and audio tapes are often used in both civil and criminal cases to recreate accident scenes, preserve an expert's testimony, or record undercover drug buys. Once these tapes are admitted into evidence and played at trial, they are open to the public. The Court perceives no difference in those situations and the videotape at issue here. Thus, the Court finds that allowing public access to the videotape of the Governor's deposition does not run afoul of Federal Rule of Criminal Procedure 53.

■ As to the second issue, after much deliberation, the Court was unable to conceive of a situation in which Defendant's constitutional rights would be violated or lessened if the public were given access to inspect and copy the videotape. Likewise, the Court could not envision some "higher value" which would rebut the strong presumption of the public's right of access. There is no question that a written transcript of the Governor's deposition would be made available to the public upon the admission of his testimony before the jury. There is also little doubt that various news organizations will purchase a copy of the transcript and will quote from it in their news reports.

In chambers, the Court asked Defendant to articulate what prejudice he would suffer if the public is allowed access to the videotape. Specifically, the Court asked Defendant: assuming a juror inadvertently sees on television a replay of the Governor's deposition, how would he suffer any greater prejudice under that scenario than he would if a juror inadvertently sees a picture of the Governor on television with an excerpt of his deposition from the transcript placed underneath the Governor's picture?[6] Defendant

---

**5.** Rule 53 provides: "The taking of photographs in the court room during the progress of judicial proceedings or radio broadcasting of judicial proceedings from the court room shall not be permitted by the court."

**6.** The Court stresses that we have daily admon-

could not articulate, to the Court's satisfaction, a reason why he would suffer prejudice if the public is given access to the videotape.

## V.

■ As for the Governor's request, his interest is somewhat more clear. The Governor is concerned about possible negative publicity, a possible distortion or misreporting of his statements, etc. This is only natural, and the Court is fully cognizant of such realistic concerns. However, the Seventh Circuit has stated that such factors are irrelevant to a trial judge's decision:

> Whether the news media would have accurately reported or whether the public would have understood the contents of the tapes should have been of no concern to the trial judge. The trial judge had no duty to assure that the news media would do its job properly or that the public would not be misinformed. To the contrary, assuming such a duty would greatly exceed the function of the judiciary. The trial judge's sole concern was with the constitutional rights of the defendants, and upon determining that they would suffer no prejudice from release of the tapes his proper inquiry was at an end.

*Guzzino*, 766 F.2d at 304.

Furthermore, although the Court has been unable to unearth a case from the Seventh Circuit which is on all fours with the issue at hand, when the Seventh Circuit has tangentially or peripherally considered the issue, that court has relied upon case law from the Second Circuit. While stopping short of adopting the Second Circuit's "extraordinary circumstances" test, the Seventh Circuit has cited, with approval, language from *United States v. Myers*, 635 F.2d 945 (2nd Cir.1980). In *In re Continental Illinois Securities Litigation*, the Seventh Circuit opined:

> The Second Circuit's further observation in Myers is therefore germane to the case at hand.

ished the jury to avoid any media coverage of the trial and to refrain from discussing the case with anyone until it is time to deliberate their verdict.

**7.** Likewise, although the Governor now objects to the release of the videotape, he agreed to the deposition by video rather than simply having a

Once the evidence has become known to the members of the public, including representatives of the press, through their attendance at a public session of court, it would take the most extraordinary circumstance to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, *when it is in a form that readily permits sight and sound reproduction.*

*In Matter of Continental Illinois Securities Litigation*, 732 F.2d at 1313 (emphasis added). Based upon the Seventh Circuit's language and their approval of the Second Circuit's liberal view of public access, the Court believes that if presented with the issue, the Seventh Circuit would err on the side of disclosure. Accordingly, the Court believes that public access to the videotape must be allowed.

It is also important to note that it was Defendant who stipulated to the Governor being deposed in lieu of testifying in person. It was Defendant who decided to take the Governor's Rule 15(a) deposition by videotape. Finally, it was Defendant who decided to present the videotape as evidence in his case-in-chief and to play the videotape to the jury.[7]

## VI.

■ Finally, Defendant and the Governor ask the Court to stay our ruling on the release of the videotape until they have had an opportunity to do some legal research and prepare a proper motion on the issue. While, there may be some room for debate as to the state of the law regarding the right of the public's access to a videotape of a Rule 15(a) deposition, once the Court has determined that there is a right of access, the Court's mandate from the Seventh Circuit is clear. The Seventh Circuit dictates that access be immediate:

court reporter transcribe the deposition. It should further be noted that the Court was accommodating the Governor's schedule by allowing him to be deposed pursuant to Rule 15(a) rather than being forced to cancel his trip to India in order to remain in the country to testify in person.

In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous. *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Continental Illinois Securities Litigation,* 732 F.2d at 1310. The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression. "[E]ach passing day may constitute a separate and cognizable infringement of the First Amendment." *Nebraska Press Ass'n v. Stuart,* 423 U.S. 1327, 1329, 96 S.Ct. 251, 254, 46 L.Ed.2d 237 (U.S. Neb.1975).

*Grove Fresh Distributors,* 24 F.3d at 897.

According to the Seventh Circuit, the First Amendment presumes a right of public access to the Court and the Court's documents. *Id.* This strong presumption may only be rebutted upon a showing that "suppression is essential to preserve higher values." *Id.,* quoting *Press–Enterprise,* 464 U.S. at 510. Here, the Court finds that the strong presumption has not been rebutted. Furthermore, the Seventh Circuit has admonished that "[a]ny doubts must be resolved in favor of disclosure." *Grove Fresh Distributors,* 24 F.3d at 897. Therefore, if the Court errs, we err on the side of disclosure.

*Ergo,* Defendant's oral motion to keep the videotape of the Governor's deposition sealed and the Governor's oral motion for a protective order are DENIED.