George CUSACK and Marion Hart, and all others similarly situated, Plaintiffs–Appellees,

v.

BANK UNITED OF TEXAS FSB, Defendant–Appellee.

Appeal of James B. RAGAN and Timothy W. Monsees.

No. 98–2021.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1998.

Decided Oct. 28, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 17, 1998.

Barry G. Reed (argued), Zimmerman & Reed, Minneapolis, MN, for Plaintiffs–Appellees.

Alan H. Maclin (argued), Briggs & Morgan, St. Paul, MN, Robert J. Pratte, Briggs & Moran, Minneapolis, MN, for Defendant–Appellee.

Joseph A. Power, Jr., Power, Rogers & Smith, Chicago, IL, F. Paul Bland, Jr. (argued), Washington, DC, for Appellants.

Before CUMMINGS, CUDAHY and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

More than 100 class actions have been filed in the United States challenging the mortgage escrow impound accounting practices of most of the mortgage servicing industry. Approximately 50 of those cases were filed in or transferred to the Northern District of Illinois and assigned to District Judge Zagel.

The parties settled this case now before us. Two attorney members of the class, appellants Ragan and Monsees, however, have objected to the settlement and appealed from the district court's order approving it and denying their motion to intervene. In our view the settlement was fair, adequate and reasonable and therefore we affirm the district court's decision.

**Background of the case.**

Plaintiffs George Cusack and Marion Hart commenced this action against defendant Bank United of Texas in 1994, alleging problems with the defendant's mortgaging practices. After this case was transferred to the court below, it was certified as a class action. Thereafter the bank modified its escrow servicing practices to make them consistent with plaintiffs' demands. The bank also made a

multi-million dollar refund of surplus escrow deposits earlier than was required by Department of Housing and Urban Development regulations.

Under the 1997 settlement, defendant Bank United agreed to provide early mortgagors a credit of $250 and current mortgagors a credit of $175. The credits for current mortgagors are valid for five years. The credits have a potential maximum value to the class exceeding $29,000,000.[1] If not used in their entirety, as they almost certainly will not be, their value is less, but still not negligible.

Pursuant to the district court's December 2, 1997 order approving the settlement, notice of the settlement was mailed to all current mortgage class members, and notice was also published in the national edition of the *New York Times* for the benefit of those persons whose current addresses were not maintained by defendant bank. The two class member appellants, Ragan and Monsees, filed an objection to the settlement, objecting to the order regarding discussion of the settlement with the press and others, requesting public disclosure of the redemption rates of the refinanced credits, and disputing the value of the certificates involved in the settlement. Despite their objections, the court approved the settlement and denied appellants the relief they still seek.

Plaintiffs alleged that the defendant bank maintained surplus deposits in class members' escrow accounts beyond the reserve limits permitted by the plaintiffs' mortgages or by federal law. District Judge Zagel has handled fifty such cases and he has also overseen numerous settlements in this sort of dispute. Consequently he has become familiar with the various issues raised. In the present case, the parties reached a settlement after lengthy negotiations. As a result, the class members' mortgage escrow accounts are being serviced according to the conservative aggregate accounting methodology demanded by plaintiffs, with limits on escrow reserves. Millions of dollars in surplus deposits have been returned to homeowners, and class members have been provided credit on their remaining claims for damages based upon their lost use of the alleged excess funds maintained in these escrow accounts. The district judge conducted

---

1. This amount consists of 167,000 current mortgagors with escrow accounts times $175.

regular status conferences and decided numerous motions. We believe, therefore, that intervention by appellants was unnecessary.

**Approval of the settlement was appropriate.**

■ The two class member appellants have not shown that the proposed settlement was unfair, unreasonable and inadequate. Consequently there was no abuse of discretion in approving it. *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir.1979) ("[W]hen an agreement has been approved by the district court, it will not be reversed on appeal absent plain error or an abuse of discretion."); *Armstrong v. Board of School Directors*, 616 F.2d 305, 318 (7th Cir.1980) (abuse of discretion standard appropriate in review of class action settlement given extensive experience of the district judge with the kind of case) (overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir.1998)).

The merits of the present case were highly disputed, and it was uncertain whether plaintiffs could prevail. Appellants criticize the district court's approval of the settlement and assert that Bank United may manipulate the value of the credits, but there has been no showing that the bank intends to reduce the value of the settlement credits. Moreover, the district judge has warned that such an action would be a breach of the settlement agreement. We are confident that he would treat any such conduct with severity and swiftness.

■ Appellants object to the district judge's ordering that the ultimate redemption rates be filed under seal with the court. There is a strong public interest in disclosure. A seal is an exceptional measure. See *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir.1994) (seal only appropriate where necessary to preserve higher values); *In the Matter of Continental Illinois Securities Litig.*, 732 F.2d 1302, 1314 (7th Cir.1984) (seal appropriate only in an exceptional circumstance). In the present case the district judge weighed the value of disclosure against the proprietary nature of some information that might be disclosed. An unspecified proprietary interest is not, without more, a higher value than public disclosure. Here the "more" is provided by the district judge's assessment of the low public value of disclosure in the circumstances weighed against the possible costs to the defendant of that disclosure. In view of the practical challenges of computing the redemption rate, we agree that the present value to the public of the disclosure of redemption rates is minimal. It would take several years for a meaningful assessment of the rate of redemption to emerge. Potential redeemers of coupons would not necessarily act at once. Enough time must pass so that a reasonable number of class members have a reasonable opportunity to choose to redeem or not. When the basis for a meaningful assessment of the rates is established, the district court may consider it appropriate to remove the seal. By then, the value of any proprietary information to defendants might be lessened, while the value to the public of accurate and meaningful information on redemption rates might well exceed the costs.

It was conceded, moreover, that interested persons can apply at present to the district court for the data, thus protecting the bank from persons with improper motives and from competing mortgage lenders, while making the data available for persons who, like class members Ragan and Monsees, have a legitimate interest in ensuring that the terms of the settlement are properly enforced. Should their research disclose any suggestion of improper conduct by defendants, Ragan, Monsees, or any other person with a legitimate interest would be able to bring this matter to the attention of the court for prompt and appropriate action.

For these reasons, the district court did not abuse its discretion in requiring an appropriate basis for providing access to this information.

■ Since these two objectors did not make a showing that they were prejudiced or otherwise adversely affected by the class action settlement, the motion to intervene was properly denied. The remaining decisions

below under attack[2] are also AFFIRMED.

---

2. The decisions assailed by Messrs. Ragan and Monsees are (1) the decision approving the settlement and attorneys' fees, (2) the decision order-ing the discount certificate redemption rates to be filed under seal, and (3) the decision denying these two appellants' motion to intervene.