### The APPLE IPOD ITUNES ANTITRUST LITIGATION.

**This Order Relates to: All Actions.**

**Case No.: 05–CV–0037 YGR**

United States District Court,
N.D. California.

Signed December 17, 2014

ORDER DENYING NONPARTY MEDIA INTERVE-
NORS' MOTION TO COPY THE VIDEO DE-
POSITION OF STEVE JOBS

Re: Dkt. No. 977

YVONNE GONZALEZ ROGERS,
United States District Court Judge

On Monday, December 8, 2014, non-parties Bloomberg L.P., The Associated Press, and Cable News Network, Inc. ("Media Intervenors") moved to intervene in this case for the limited purpose of obtaining access to the video deposition of former CEO of Apple Inc. ("Apple") Steve Jobs. (Dkt. No. 977.) The motion is styled as one for "access." In reality, its focus, more precisely, seeks permission to copy the video deposition.[1] Given the time sensitive nature of the request, the Court ordered any opposition be filed by 8 a.m. on Tuesday, December 9, 2014, and scheduled a hearing for 4 p.m. on that same day. Apple opposes the motion. (Dkt. No. 979.) After oral argument, the Media Intervenors submitted supplemental authority on Friday, December 12, 2014. (Dkt. No. 994.) Apple submitted a response thereto on Sunday, December 14, 2014. (Dkt. No. 1003.) On Tuesday, December 16, 2014, the trial concluded after the jury rendered a verdict. (Dkt. No. 1008.)

Having carefully considered the papers submitted and the arguments of counsel, the Court hereby DENIES the Media Intervenors' motion for access to the videotaped deposition of Steve Jobs by way of a copy and beyond that which has already been granted. As set forth below, the request is not authorized by current Ninth Circuit precedent and such an extension of existing law is not warranted or prudential.

## I. RELEVANT FACTS

Plaintiffs filed the instant case in 2005. The long history of this antitrust dispute has been recounted in detail in earlier orders. *See In re Apple iPod iTunes Antitrust Litig.*, No. 05–CV–0037 YGR, 2014 WL 6783763, at *2 n. 4 (N.D.Cal. Nov. 25, 2014).

1. The parties played only an excerpted portion of the deposition during trial on Friday afternoon, December 5, 2014. While the motion at issue appeared to request access to the entire video deposition, during oral argument the Media Intervenors clarified that they only seek access to the portion of the video played at trial.

On April 12, 2011, plaintiffs deposed Steve Jobs, Apple's then-CEO. Nearly six months later, he passed away. The parties captured the deposition via audiovisual recording ("the Jobs Deposition"). At the time of the deposition, Jobs was on medical leave from the company, suffering from cancer.

On December 2, 2014, evidence began in the instant trial. To accommodate access to the evidence by the public, including the press, a large, 55-inch extra monitor was installed in the courtroom, facing the gallery. This allowed members of the public to view the evidence in the same manner as the jury, whether by way of documents, charts, summaries, or audiovisual deposition testimony. Moreover, on December 4, 2014, the Court issued an order requiring. that counsel "place five copies of each admitted exhibit on the designated table outside of Courtroom 1 after trial adjourns each day, either in paper form or on five USB flash drives. Each side [was] responsible for providing copies of the admitted exhibits that it requested be admitted." (Dkt. No. 951 (Order for Parties to Accommodate the Press).)

Pursuant to Civil Local Rule 77-3, cameras were not allowed in the courtroom during the trial. Thus, no live witness's testimony was recorded visually. Throughout the trial numerous clips of deposition testimony for direct and impeachment purposes were shown to the jury (and to members of the public present in the courtroom). None of these video clips were offered or admitted into evidence as exhibits. However, the transcribed excerpts were attached to the official trial transcript. On December 5, 2014, certain portions of the Jobs Deposition, comprising about thirty minutes of the two-hour deposition, were played for the

jury in open court. Advanced notice was provided to members of the public, including the media, who were previously present during the trial. (Dkt. No. 1009 (Tr.) at 869:12-17.) A transcript of the portions of the Jobs Deposition to be presented at trial had been filed in advance on the public docket. (Dkt. No. 846-9.)[2] The instant motion followed.

## II. LEGAL STANDARD

The Ninth Circuit has not squarely addressed the issue of whether to allow the public copying access to a videotaped deposition used during a civil trial and not admitted into evidence as an exhibit.

■ As a starting point for analyzing the request, the Court notes that a strong judicial presumption exists favoring public access to judicial records, including the right to copy and inspect those records. *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nevada,* 798 F.2d 1289, 1290, 1293–94 (9th Cir.1986). The underlying purpose of the presumption is to "promot[e] the public's understanding of the judicial process and of significant public events ...." *Id.* at 1294. The Ninth Circuit has apparently not defined the contours of a "judicial record."

■ However, even where a particular item is found to be a judicial record, and notwithstanding the presumption favoring access, courts in the Ninth Circuit must also evaluate the risk that the material at issue would be put to an improper use, which may counsel against permitting the exercise of that right in a given instance. *Id.* Improper uses include "publication of scandalous, libelous, pornographic, or trade secret materials; infringement of fair trial rights of the defendants or third per-

---

**2.** The transcript of proceedings from December 5, 2014, attaching the relevant transcript of the Jobs Deposition, is also now available

to the public. (Dkt. No. 1010 (Tr.) at 228-238.)

sons; and residual privacy rights." *Id.* (internal quotations omitted). Ultimately, the court must weigh " 'the interests advanced by the parties in the light of the public interest and the duty of the courts.' " *Id.* (quoting *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 602, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)).

The Court begins with the threshold question of whether the video deposition testimony at issue constitutes a judicial record.

## III. DISCUSSION

### A. WHETHER THE JOBS DEPOSITION IS A JUDICIAL RECORD

██ It appears that only the Eighth Circuit has come close to addressing squarely the threshold issue. In *United States v. McDougal,* 103 F.3d 651, 656 (8th Cir.1996), the Eighth Circuit held "as a matter of law that the [deposition] videotape itself is not a judicial record to which the common law right of public access attaches [and] [e]ven if the defendants had moved for the admission of the videotape into evidence, the videotape itself would not necessarily have become a judicial record subject to public review." In *McDougal,* a number of media organizations moved for access to a video recording of President Clinton's deposition testimony in a criminal case immediately after it was taken or, in the alternative, at the time of its display to the jury. *Id.* at 652. Ultimately, excerpts of the video deposition were played at trial. *Id.* at 653-54. That deposition, recorded at the White House and given by a sitting president, *id.* at 653, was presumably of great public interest. The trial court denied the motion, finding the video deposition was not a judicial record and that "the press's First Amendment right of access to public information had been 'fully satisfied in this instance by allowing the press to attend the playing of the videotaped deposition and in providing

full access to the written transcript.' " *Id.* at 652, 654, 656.

The authorities presented by the Media Intervenors for the contrary position do not persuade. As reflected in those cases, while other courts have allowed the copying of videotapes in certain circumstances, frequently the videotape at issue was not a deposition but instead directly documented the underlying conduct at issue, was deposition testimony that had been admitted as an exhibit, or its release was unopposed. *See, e.g., Valley Broad. Co.,* 798 F.2d at 1290 (involving non-testimonial audio and video tape recordings admitted into evidence in a criminal case); *United States v. Mouzin,* 559 F.Supp. 463, 463-64 (C.D.Cal. 1983) (same); *United States v. Criden,* 648 F.2d 814, 815-16 (3d Cir.1981) (involving apparently non-testimonial video and audio tapes that had been admitted into evidence); *Application of CBS, Inc.,* 828 F.2d 958, 960 (2d Cir.1987) (apparently involving "a videotaped [deposition] exhibit" that had been "introduced in evidence"); *United States v. Graham,* 257 F.3d 143, 147 (2d Cir.2001) (involving "a number of audio and video tapes featuring conversations between and among the defendants and a confidential informant" that had been played in open court); *Application of CBS, Inc.,* 540 F.Supp. 769, 770 (N.D.Ill.1982) (involving audio tapes of "recordings of conversations" relating to the defendant in a criminal case). Some do not even address the question of whether the videotape at issue constituted a "judicial record." *See United States v. Fromme,* 2013 U.S. Dist. LEXIS 119044, at *1–2 (E.D.Cal. Aug. 21, 2013) (involving an unopposed motion to unseal the video tape deposition of President Ford by the Historical Society but not directly addressing the issue of whether it was a judicial record).

One case presented by the Media Intervenors does address the specific question presented, albeit in the context of a criminal case governed by Federal Rule of Criminal Procedure 53.[3] In *United States v. Berger*, 990 F.Supp. 1054, 1057 (C.D.Ill. 1998), the court held "that the [deposition] videotape [at issue] is more akin to a judicial record than a violation of the ban of cameras in a federal courtroom." Nevertheless, that lone case is readily distinguishable from the circumstances here. The subject of the deposition in that case—Illinois Governor Jim Edgar—had agreed to appear the following day at the trial when the court was faced with the unexpected illness of a juror, with only one alternate remaining. *Id.* at 1055. The testimony had been specially scheduled due to the Governor's pre-planned three-week trip abroad. *Id.* Given the circumstances, the parties stipulated to a deposition by video in lieu of live testimony at trial. *Id.* at 1055, 1058 n. 7. Critically, and prior to the deposition being played at trial, the court and the parties had agreed that "once played to the jury, both the transcript and the videotape itself would be open to the public for inspection and copying." *Id.* at 1056. In the intervening two weeks, the Governor failed to object to the planned release of the videotape. *Id.* at 1056 & n. 3. He only objected an hour before the deposition transcript and video were to be made publicly available. *Id.* The court ultimately authorized the video's release over the Governor's objection. *Id.* at 1059.

Here, the Court agrees with the Eighth Circuit and concludes that the Jobs Deposition is not a judicial record. It was not admitted into evidence as an exhibit. Instead, the Jobs Deposition was merely presented in lieu of live testimony due to the witness's unavailability, and was and should be treated in the same manner as any other live testimony offered at trial. As is typical of all live testimony, it is properly made available to the public through its initial courtroom presentation and, subsequently, via the official court transcript, the latter of which is the judicial record of such testimony. Said differently, the docket, transcript, and exhibits are the court's official "record" of the trial, "record" being defined, in part, as "[t]he official report of the proceedings in a case, including the filed papers, a verbatim transcript of the trial or hearing (if any), and tangible exhibits." *Black's Law Dictionary* 1279 (7th ed. 1999).

To employ such a rule as called for by the Media Intervenors could create anomalous results. For example, the public would have special access to videos that would not even be available to the court of appeals in the appellate record.[4] And snippets of previously recorded impeachment testimony played at trial would be publicly available for copying and distribution, while the direct live testimony of witnesses would remain sheltered from audiovisual recording. Thus, without Ninth Circuit authority mandating such a release, the Court finds the reasoned conclusion of the Eighth Circuit to be most persuasive.

**B. The Public Right of Access and the Weighing of Interests**

All of the trial testimony in this case was accessible to the public—the courtroom was not sealed for any portion of it. In fact, to accommodate the press, the Court

---

**3.** "Except as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom." Fed. R. Crim. P. 53.

**4.** "The following items constitute the record on appeal: (1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk." Fed. R. App. P. 10.

**1276**

ordered additional copies of exhibits be made available on a daily basis and ensured the public had advanced notice of the playing of the Jobs Deposition.

Additionally, the Eighth Circuit in *McDougal* recognized that "courts should avoid becoming the instrumentalities of commercial or other private pursuits." 103 F.3d at 658. Here, the Court has no evidence that the news media intend to use the video for improper purposes. Nevertheless, the Eighth Circuit counseled that "the public's interest in gaining access to the videotape recording is only marginal [given] the testimony has already been made visually and aurally accessible in the courtroom and the transcript has been widely distributed and publicized," *id.* at 658, as is the case here.

The Court is mindful of the public interest in the video testimony at issue and in the importance of the presumption of public access to judicial records. The Court also recognizes the public policy concern raised by defendant, namely that if releases of video depositions routinely occurred, witnesses might be reticent to submit voluntarily to video depositions in the future, knowing they might one day be publicly broadcast. If cameras in courtrooms were not currently prohibited, the argument might have less weight. However, given the lack of authority approving such a release, the concern is well-taken that under the current rules, deponents have no expectation or notice that the videos will be disseminated beyond the presentation during trial.

If the video had been introduced as a trial exhibit, or if no objection had been lodged, the ruling on this motion might be different. In light of the present circumstances and the lack of legal authority justifying the Media Intervenors' request, however, the Court will not authorize the copying of the Jobs Deposition.

## IV. CONCLUSION

As set forth above, the Court has considered the Media Intervenors' request and therefore GRANTS the Motion for Leave to Intervene. However, the Court DENIES the Motion for Access to the Video Deposition of Steve Jobs for purposes of copying.

This Order terminates Docket No. 977.

**IT IS SO ORDERED.**